# EXHIBIT "F"

**BOCHETTO & LENTZ, P.C.**
By:     George Bochetto, Esquire
         Jeffrey W. Ogren, Esquire
Attorney I.D. Nos.:    27783, 59090
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN
RESPONSE TO THE ANSWER, NEW MATTER AND
COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT
WITHIN TWENTY (20) DAYS OF SERVICE HEREOF

_____

                                    Attorneys for Defendant

---

OCTAVIO PENA                        :       COURT OF COMMON PLEAS
                                    :       BUCKS COUNTY
            Plaintiff,              :       TRIAL DIVISION
                                    :
    v.                              :       NO. 07-08068-29-1
                                    :
KATHY COKUS                         :
                                    :
            Defendant.              :

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT WITH NEW MATTER AND COUNTERCLAIMS

Defendant, Kathy Cokus ("Defendant" or "Cokus"), by and through undersigned counsel,

Bochetto & Lentz, P.C., hereby presents her Answer, New Matter and Counterclaims to

Plaintiff's Complaint.

1.      Admitted.

2.      Denied.  After a reasonable investigation, Defendant is unable to
determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore
denied.  By way of further response, upon information and belief, Plaintiff is not currently
licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed
at any time relevant to the allegations in the Complaint.

3.      Denied.  After a reasonable investigation, Defendant is unable to
determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore
denied.  By way of further response, upon information and belief, Plaintiff is not currently

**BOCHETTO & LENTZ, P.C.**
By:    George Bochetto, Esquire
         Jeffrey W. Ogren, Esquire
Attorney I.D. Nos.:    27783, 59090
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN
RESPONSE TO THE ANSWER, NEW MATTER AND
COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT
WITHIN TWENTY (20) DAYS OF SERVICE HEREOF

_____

Attorneys for Defendant

| | | |
|---|---|---|
| OCTAVIO PENA | : | COURT OF COMMON PLEAS |
| | : | BUCKS COUNTY |
| Plaintiff, | : | TRIAL DIVISION |
| | : | |
| v. | : | NO. 07-08068-29-1 |
| | : | |
| KATHY COKUS | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT WITH NEW MATTER AND COUNTERCLAIMS

Defendant, Kathy Cokus ("Defendant" or "Cokus"), by and through undersigned counsel, Bochetto & Lentz, P.C., hereby presents her Answer, New Matter and Counterclaims to Plaintiff's Complaint.

1.    Admitted.

2.    Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

3.    Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, upon information and belief, Plaintiff is not currently

licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

4. Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

5. Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

6. Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator in the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

7. Admitted, except that Cokus lives in Yardly.

8. Denied. The corresponding averment in Plaintiff's Complaint states a legal conclusion to which no response is required. It is therefore denied.

9. Denied. The corresponding averment in Plaintiff's Complaint states a legal conclusion to which no response is required. It is therefore denied.

2

10.     Denied.  Cokus never retained Plaintiff to investigate the basis for a *qui tam* claim and strict proof is demanded at time of trial.  The purported contract attached to Plaintiff's Complaint is not between Plaintiff and Cokus.  By way of further response, upon information and belief, Plaintiff is neither a licensed attorney nor investigator and is legally incapable to investigate the basis for a *qui tam* claim as alleged in his complaint.  It is admitted only that Cokus retained the firm of Zeichner, Ellman & Krause LLP to prosecute a *qui tam* claim against her former employer, Bristol-Myers Squibb Company.

11.     Denied.  Plaintiff denies there is any contractual responsibility with Plaintiff for anything, including the Exhibit attached to Plaintiff's Complaint as Exhibit 3, and strict proof is demanded at time of trial.  By way of further response, to the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document which speaks for itself, said characterizations are denied.

12.     Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.  By way of further response, upon information and belief, Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services, as Plaintiff was not at the time licensed by the Commonwealth of Pennsylvania as a private investigator.  As a result, the purported contract is void and unenforceable.  Further, private detectives "should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except as witnesses who are called upon to testify to facts learned from their investigations." *Misc. Docket, 1955, No. 2783*, 9 Pa. D.

3

& C.2d 410, 413 (C.C.P. Berks County, 1956.) Here, even if Plaintiff's contention is correct, that Cokus contracted with him for private investigation services (which she denies), the alleged 12 ½ % compensation improperly gives Plaintiff a stake in the outcome of the case and is therefore void as against public policy.

13.    Denied. Cokus denies "reaffirming" an agreement with Plaintiff. To the extent there was any agreement, which is denied by Cokus, said agreement is void as a matter of law for the reasons already stated. By way of further response, to the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 4) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

14.    Denied. Cokus denies "reaffirming" an agreement with Plaintiff. To the extent there was any agreement, which is denied by Cokus, said agreement is void as a matter of law for the reasons already stated. By way of further response, to the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 5) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

15.    Denied. To the extent the corresponding paragraph in Plaintiff's Complaint characterizes documents which speak for themselves, said characterizations are denied and strict proof is demanded at time of trial.

16.    Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding paragraph of Plaintiff's Complaint and it is therefore denied. By way of further response, to the extent the law firm of Zeichner, Ellman & Krause or Nathan Schwed, Esquire notified Plaintiff of this fact, such a communication was not authorized by Cokus.

4

17.    Denied.  To the extent Plaintiff was provided the information in the corresponding paragraph to Plaintiff's Complaint by Nathan Schwed or Zeichner, Ellman & Krause on Cokus' behalf, said communications were not authorized by Cokus.  By way of further response, Cokus denies the existence of any enforceable agreement with Plaintiff for the reasons already stated.

18.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 6) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

19.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 7) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

20.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.

21.    Denied.  By way of further response, upon information and belief, Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services for the reasons already stated.

22.    Denied.  Cokus did not "reached out to" Plaintiff to discuss civil and criminal proceedings in which she was involved.

23.    Denied.  To the extent any conversations occurred between Plaintiff and Cokus, Plaintiff never advised Cokus that "he was not actively practicing his profession, but would, nonetheless, attempt to assist her."

5

24.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

25.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

26.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him

6

about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

27.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 8) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

28.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

29.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private

7

investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24. To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 9) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

30.     Denied. The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

31.     Denied. The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of

1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

32.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

33.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.  To the extent the corresponding paragraph in Plaintiff's Complaint

9

characterizes a document (Exhibit 10) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

34.     Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

35.     Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

36.     Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore

denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

37.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

38.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a

license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

39.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

40.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

41.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

42.    Denied.  Defendant denies the corresponding paragraph in Plaintiff's Complaint as Cokus never asked for Plaintiff's assistance.

43.    Denied as stated.  It is admitted only that Plaintiff saw certain documents.

44.    Denied as stated.  It is admitted only that Plaintiff saw certain documents.

45.    Denied as stated.  It is admitted only that Plaintiff saw certain documents.

46.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.  By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator and was not so licensed at any time relevant to the allegations in the Complaint.

47.    Denied.  Cokus was informed of and knew about *qui tam* type suits from other, more reliable sources.

48.    Denied.  Cokus was informed of and knew about *qui tam* type suits from other, more reliable sources.

49.    Denied.  Plaintiff only ever recommended Schwed as a lawyer.

50.    Denied.  Plaintiff only ever recommended Schwed as a lawyer.

51.    Denied.  Plaintiff only ever recommended Schwed as a lawyer.

52.    Denied.  Plaintiff only ever recommended Schwed as a lawyer.

53.    Admitted.  By way of further response, and unbeknownst to Cokus, Plaintiff was a client of Zeichner, Ellman & Krause LLP.  Further, Cokus now believes the purported Agreement which is attached to Plaintiff's Complaint as Exhibit 3 (and drafted by Nathan Schwed, Esquire of Zeichner, Ellman & Krause LLP), is nothing more than proof that Plaintiff was being compensated by Zeichner, Ellman & Krause LLP for bringing the Cokus matter to them.  In essence, Plaintiff was being paid a "runner's fee," contrary to law.

54.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.  By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator by the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

55.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of

14

1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

56.     Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.  By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator and was not so licensed at any time relevant to the allegations in the Complaint.

57.     Denied as stated.  Plaintiff only arranged for one or two meetings with the law firm in an effort to have such law firm hired.

58.     Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.  By way of further response, upon information and belief, Plaintiff is not currently licensed as a private investigator and was not so licensed at any time relevant to the allegations in the Complaint.

59.     Denied.  By way of further response, upon information and belief, Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services as Plaintiff was not at the time licensed by Pennsylvania as a private investigator.  As a result, the purported contract is void and unenforceable.  Further, private detectives "should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except

15

as witnesses who are called upon to testify to facts learned from their investigations." *Misc.*

*Docket, 1955, No. 2783*, 9 Pa. D. & C.2d 410, 413 (C.C.P. Berks County, 1956.)

60.    Denied.  By way of further response, upon information and belief, Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services as Plaintiff was not at the time licensed by Pennsylvania as a private investigator.  As a result, the purported contract is void and unenforceable.  Further, private detectives "should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except as witnesses who are called upon to testify to facts learned from their investigations." *Misc.*

*Docket, 1955, No. 2783*, 9 Pa. D. & C.2d 410, 413 (C.C.P. Berks County, 1956.)

61.    Denied.  Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services as Plaintiff was not at the time licensed by the Commonwealth of Pennsylvania as a private investigator.  As a result, the purported contract is void and unenforceable.  Further, private detectives "should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except as witnesses who are called upon to testify to facts learned from their investigations." *Misc. Docket, 1955, No. 2783*, 9 Pa. D. & C.2d 410, 413 (C.C.P. Berks County, 1956.)

62.    Denied.  By way of further response, upon information and belief, Plaintiff could not lawfully enter into a contract whereby he agreed to receive compensation in return for providing private investigation services as Plaintiff was not at the time licensed by the Commonwealth of Pennsylvania as a private investigator.  As a result, the purported contract is

void and unenforceable. Further, private detectives "should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except as witnesses who are called upon to testify to facts learned from their investigations." *Misc. Docket, 1955, No. 2783*, 9 Pa. D. & C.2d 410, 413 (C.C.P. Berks County, 1956.)

63.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 4) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

64.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 4) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

65.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.

66.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 11) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

67.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  Further, Plaintiff

is not currently licensed as a private investigator by the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

68.    Denied.  By way of further response, to the extent such allegation is even remotely true, the corresponding averment in Plaintiff's Complaint demonstrates Plaintiff was practicing law without a license.

69.    Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  Further, Plaintiff is not currently licensed as a private investigator by the Commonwealth of Pennsylvania and was not so licensed at any time relevant to the allegations in the Complaint.

70.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

71.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him

about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

72.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

73.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such

employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24.

74.    Denied. The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24. To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 12) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

75.    Denied. The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied. By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer." 22 P.S. §24. To the extent the corresponding paragraph in Plaintiff's Complaint

characterizes a document (Exhibit 13) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

76.    Denied.  The corresponding paragraph to Plaintiff's Complaint is fraught with scandalous and impertinent matter which is wholly unrelated to this case and it is therefore denied.  By way of further response, to the extent Plaintiff is or was a duly licensed private investigator pursuant to the Private Detective Act of 1953, and to the extent Plaintiff told him about these events during an investigation, Plaintiff has violated the Private Detective Act of 1953, Section 24, which provides "[a]ny person who is or has been an employee of a holder of a license shall not divulge to any one . . . any information acquired by him during such employment in respect of any of the work to which he shall have been assigned by such employer."  22 P.S. §24.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 12) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

77.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 12) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.  By way of further response, Plaintiff is entitled to no amount of money from Defendant as she never entered into an agreement with Plaintiff and the agreement is void as a matter of law as Plaintiff was not a properly licensed investigator by the Commonwealth of Pennsylvania when he entered into the agreement.

78.    Denied.  Cokus never became "overwhelmed by greed."  To the contrary, the inclusion of the scandalous and impertinent matter by Plaintiff in his Complaint illustrates it is the Plaintiff who is overwhelmed by his greed.

21

79.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf.

80.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf.

81.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf.

82.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf.

83.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore

denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf. Further, Cokus is under no obligation to pay Plaintiff any sums as Plaintiff and Defendant never made an agreement.

84.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf. Further, Cokus is under no obligation to pay Plaintiff any sums as Plaintiff and Defendant never made an agreement.

85.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf. Further, Cokus is under no obligation to pay Plaintiff any sums as Plaintiff and Defendant never made an agreement.

86.     Denied. After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint. It is therefore denied. By way of further response, Cokus never authorized Nathan Schwed or Zeichner, Ellman & Krause LLP to reveal attorney/client communications to Plaintiff and never authorized Zeichner, Ellman & Krause LLP to work with Plaintiff on her behalf.

23

87.     Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.

88.     Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.

89.     Denied as stated.  It is admitted only that on September 27, 2007, George Bochetto, Esquire notified Plaintiff's attorney that he represented Cokus.

90.     Denied.  After a reasonable investigation, Defendant is unable to determine the veracity of the corresponding averment in Plaintiff's Complaint.  It is therefore denied.

91.     Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 6) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

92.     Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 6) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

93.     Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 6) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

94.    Denied.  To the extent the corresponding paragraph in Plaintiff's Complaint characterizes a document (Exhibit 6) which speaks for itself, said characterizations are denied and strict proof is demanded at time of trial.

95.    Defendant incorporates by reference all the foregoing responses to Plaintiff's allegations.

96.    Denied.  Cokus never entered into any enforceable agreement with Plaintiff to give him 12 ½ percent of the proceeds she received from the United States Government, for the reasons already stated.

97.    Denied.  Cokus never entered into any enforceable agreement with Plaintiff to give him 12 ½ percent of the proceeds she received from the United States Government, for the reasons already stated.

98.    Denied.  Cokus never entered into any enforceable agreement with Plaintiff to give him 12 ½ percent of the proceeds she received from the United States Government, for the reasons already stated.

WHEREFORE, Defendant Kathy Cokus respectfully requests that Plaintiff's Complaint be dismissed with prejudice, and further demands judgment in her favor and against Plaintiff Octavio Pena, for costs of litigation and such other relief as the Court deems appropriate.

## DEFENDANT'S NEW MATTER

99.    Plaintiff fails to state a claim upon which relief may be granted.

100.    Plaintiff's request for attorneys' fees fails as a matter of law, as attorneys' fees are only awarded if the agreement so provides or if by statute.  No such agreement exists and Plaintiff's claim is not brought pursuant to any such statute.

101.    Plaintiff's request for punitive damages fails as a matter of law, as punitive damages are not awarded in claims for breach of contract.

102.    Plaintiff lacks standing to prosecute the instant cause of action against Cokus.

103.    Plaintiff's cause of action for breach of contract must fail as Cokus never entered into the purported contract with Plaintiff. Rather, the purported contract is with an entity known as Lynch International, Inc., which would nevertheless be unenforceable for all of the reasons stated herein as to Plaintiff.

104.    There was no legally cognizable consideration supporting the purported contract.

105.    To the extent the document attached to Plaintiff's Complaint as Exhibit 3 purports to be a contract, Cokus' signature was secured by Plaintiff under fraudulent, misleading, and untoward circumstances.

106.    Upon information and belief, Plaintiff was not a licensed private investigator at the time he entered into the purported agreement attached to Plaintiff's Complaint as Exhibit 3, and the purported agreement is therefore void as a matter of law and cannot be enforced as it is against public policy.

107.    Plaintiff was not a licensed attorney when he was purporting to practice law on behalf of Cokus (as alleged by Plaintiff in his Complaint at ¶¶ 44, 45, 46, 47, 48, 68, and 69), and as a result, cannot pursue a contract claim against Cokus for these services rendered as it is against public policy.

26

108.    To the extent Cokus signed the purported agreement attached to Plaintiff's Complaint as Exhibit 3, the contract could not be performed due to impossibility of performance as Plaintiff was not lawfully licensed as a private investigator.

109.    Plaintiff's cause of action is barred by the doctrine of unclean hands.

110.    Plaintiff's cause of action is barred by the applicable statute of limitations.

111.    Plaintiff's claims are barred by reason of the unlawful conspiracy Plaintiff entered into with the law firm of Zeichner, Ellman & Krause LLP, the details of which are set forth in a certain complaint joining Zeichner, Ellman & Krause LLP and Nathan Schwed, Esquire as Additional Defendants, styled *Kathy Cokus v. Zeichner, Ellman & Krause LLP and Nathan Schwed, Esquire*, the entirety of which is incorporated herein by reference as though set forth at length.

112.    To the extent Plaintiff is owed any money for any services he may have performed as alleged in his Complaint, said services were performed directly and at the behest of the law firm of Zeichner, Ellman & Krause LLP, not Cokus.

113.    Plaintiff's cause of action is barred as against public policy because he is seeking to be compensated/rewarded as a "runner" for bringing the Cokus *qui tam* case to the law firm of Zeichner, Ellman & Krause LLP.

114.    Plaintiff's cause of action is barred as against public policy, as private investigators are not to be paid contingent fees.

115.    Plaintiff is not entitled to relief for the reasons set forth in the Counterclaim stated below, the allegations of which are hereby incorporated by reference as though fully set forth herein at length.

## DEFENDANT'S COUNTERCLAIMS

### COUNT I - FRAUD

### COKUS v. PENA

1.     Cokus hereby incorporates all prior paragraphs of this pleading as though fully set forth herein at length.

2.     Cokus also hereby incorporates by reference all allegations contained in the Complaint versus Additional Defendants Nathan Schwed, Esquire and the law firm of Zeichner, Ellman & Krause, LLP as though fully set forth herein at length.

3.     Pena first thrust himself upon and introduced himself to Cokus under the alias "Paul 699.6" in or about May 2001, via the *AdultFriendFinder* website, soliciting Cokus for sex.  (See website listings attached hereto as Exhibit "A.")

4.     Cokus, then single, had a listing on *AdultFriendFinder*, in response to which Pena, then married, beseeched and urged Cokus to meet with him, love him, and bed him.

5.     Thereafter, Pena, though a married man, relentlessly persisted in his attempts to meet with Cokus, still using the alias "Paul," and finally did convince Cokus, who was then experiencing bereavement over the death of her husband and the loss of her job, to meet with Pena under such false pretenses.

6.     At such meeting, Pena falsely described himself as an investigator of international proportions, having assisted many governmental agencies, including the FBI, the CIA, and others, with profound and important investigations affecting society as a whole.

7.    Pena then described that he no longer engaged in such activities for profit, that he had already made a fortune, lived in a mansion, and that he only undertook projects on a charitable ("nonprofit") basis for those he desired to help.

8.    Pena then began a series of contacts, meetings, and interactions with Cokus designed, among other things, to insert himself into Cokus' private affairs, and the legalities she was then experiencing, concerning the loss of her employment with Bristol-Myers Squibb.

9.    Thereafter, Pena orchestrated a series of meetings with his personal attorney, Nathan Schwed, Esquire, of the law firm of Zeichner, Ellman & Krause, LLP, and convinced Cokus that such law firm could help Cokus in her difficulties with Bristol-Myers Squibb and that they were experts in *qui tam* type actions.

10.    In fact, neither Schwed nor, upon information and belief, the Zeichner, Ellman & Krause, LLP law firm, had ever handled a *qui tam* action before.

11.    In reality, Pena was essentially a "runner" for Schwed and the Zeichner, Ellman & Krause, LLP law firm, attempting to generate cases and litigation matters for them, with the offer of sharing a percentage of whatever recovery was obtained.

12.    Towards this end, Pena attended certain meetings with Schwed and the Zeichner, Ellman & Krause, LLP firm, and certain meetings in Boston, Massachusetts, concerning the retention of Schwed and Zeichner, Ellman & Krause, LLP to pursue a *qui tam* action on Cokus' behalf against Bristol-Myers Squibb.

13.    During the time period Cokus was consulting with Schwed and Zeichner, Ellman & Krause, LLP, Schwed secretly prepared the document attached to Plaintiff's Complaint

29

as Exhibit 3, purporting to have Cokus hire Lynch International, Inc. At no time did Pena or

Schwed disclose to Cokus that Schwed had prepared such document, or that he was supplying it

to Pena, or that Cokus would purportedly give up significant rights in such document.

14.    During such process, Pena put numerous papers in front of Cokus to sign,

which Cokus was led to believe dealt with the retention of the Zeichner, Ellman & Krause, LLP

law firm for the *qui tam* action. In this process, Pena may have, unbeknownst to Cokus, slipped

to Cokus the signature page of the document that is attached to his Complaint as Exhibit 3, which

she may have unwittingly signed.

15.    At no time did Cokus understand or agree to engage either Pena or Lynch

International, Inc. to render investigative or legal services on her behalf for a contingency fee.

16.    Cokus would never have agreed to pay either Pena or Lynch International,

Inc. a contingency fee for any purported investigative or legal services they purported to render.

17.    Further still, at no time did Cokus agree to convey ***all*** rights to interviews,

publications, or movies to Pena, and such "rights" were fraudulently and without notice included

in the purported contract drafted by Schwed and manipulated by Pena. Rather, Pena only ever

advised Cokus that if she needed to give interviews, he could help buffer the media so that Cokus

would not get "sued" for anything she might say in an interview, and could help her if anyone

wanted to make a movie of her experiences with Bristol-Myers Squibb.

18.    Cokus was at the time, and still is, untrained in the law, unfamiliar with

*qui tam* type litigation, and was at the time suffering not only bereavement, but financial and

emotional distress.

30

19.    At no time was Cokus ever advised by Pena or Schwed to consult with an independent lawyer concerning any purported contract.

20.    Pena, together with Schwed and the Zeichner, Ellman & Krause, LLP law firm, perceived that Cokus was in a particularly vulnerable position, both legally and emotionally, and preyed upon her to sign whatever documents they put in front of her, to her great disadvantage, and in an effort to enrich Pena, Schwed and the Zeichner, Ellman & Krause, LLP law firm.

21.    Cokus has sustained substantial damages directly as a result of the foregoing fraudulent and untoward conduct of Pena, including being subjected to the instant lawsuit for a contingency fee by Pena, and incurring legal fees in its defense, being subjected to paying an unreasonably large fee to Schwed and the Zeichner, Ellman & Krause, LLP law firm for services they should have rendered in connection with the *qui tam* litigation at a much lower price, being subjected to conflicts of interest of Pena, Schwed, and the Zeichner, Ellman & Krause, LLP law firm, being subjected to disloyalty, and a breach of confidentiality, by Pena, Schwed, and the Zeichner, Ellman & Krause, LLP law firm, as well as other financial and emotional damages.

22.    Cokus relied on Pena's repeated assurances that he only had her best interests in mind and that he was recommending Schwed and the Zeichner, Ellman & Krause, LLP law firm, not for personal gain, but because they were experts in the *qui tam* field of litigation.

23.    Pena, together with Schwed and the Zeichner, Ellman & Krause, LLP law firm, conspired with each other to defraud Cokus out of 50% of the relator's fee she is entitled to

31

from the Bristol-Myers Squibb *qui tam* litigation, in the form of a 12.5% fee to Pena and a 37.5% fee to Schwed and the Zeichner, Ellman & Krause, LLP law firm.

24.    The conduct of Pena, both individually and in tandem with Schwed and the Zeichner, Ellman & Krause, LLP law firm, was outrageous, wanton, and willful, designed purely to enrich themselves without regard to the rights or interests of Cokus.

WHEREFORE, Cokus hereby demands judgement against Pena for an amount in excess of Seventy Five Thousand ($75,000) Dollars, together with such other costs, interest, attorneys fees and relief as the court deems just, and seeks a declaration that the purported contract, dated July 13, 2001, is null and void. Cokus hereby also requests punitive damages against Pena based upon his outrageous and malicious conduct.

## COUNT II - DECLARATORY JUDGMENT

## COKUS v. PENA

25.    Cokus hereby incorporates all prior paragraphs of this pleading as though fully set forth herein at length.

26.    The purported contract attached to Plaintiff's Complaint as Exhibit 3, dated July 13, 2001, was prepared and presented to Cokus under false, fraudulent, and misleading circumstances.

27.    Further, the purported contract was prepared, produced, and borne of conflicts of interest between Pena, Cokus, and Schwed.

28.    Cokus never knowingly or voluntarily entered into or agreed to any such purported contract.

WHEREFORE, Cokus respectfully requests that this Court declare the purported contract dated July 13, 2001, null and void, and to enter such other relief, including for costs and attorneys fees, as the Court deems just.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

By:_____

George Bochetto, Esquire
Jeffrey W. Ogren, Esquire
Attorneys for Defendant

Date: 10/24/07

33

## **VERIFICATION**

I, Kathy Cokus, Defendant in the instant action, verify that the statements made in the foregoing Answer to Plaintiff's Complaint with New Matter and Counterclaim are, to the best of my knowledge, true and correct. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 10/24/07

Kathy Cokus

34

# EXHIBIT "A"



**Adult**FriendFinder.com
world's largest ... personals

Home | Update | Browse | Search | Chat | Cupid | Hot List | Magazine | Help

**SILVER MEMBER**

[Home]
[Update]
[Chat]
[Browse]
[Search]
[Magazine]
[Shop]
[Cupid]
[Hot List]
[Feedback]
[Help]

[Underline]**Click**[/Underline] **to view all your new cupid report matches!**

# "paul699.6"

### *Looking for a sensous women for descreet pleasure*

I'm 54, Married, Successful and handsome executive work in New Jersey, live in Bucks County, work for an international company, which requires me to travel several times a year. I'm looking for a sensual women who enjoys LOVE-MAKING to the fullest., no strings just sex, good times, good memories and who knows eventually good friendship.

**Last Visit: 5/ 8/01**

View Sexual Interests Topic - (add to yours)
View Work & Living Environment Topic - (add to yours)
View Outlook on Life Topic - (add to yours)
View Physical Stuff Topic - (add to yours)

**View Personality Responses**



No Photo On File

**Ideal Person** - Looking for a married woman who is desperate to be treated like a lady and enjoys sex to the fullest

## Physical Information

| | |
|---|---|
| **Gender** | Male |
| **Marital Status** | Married |
| **Race** | Caucasian |
| **Born on** | October 01, 1946 (54 years old) |
| **Height** | 5 ft 9 in |
| **Body Type** | Slim |

## Personal Information

| | |
|---|---|
| **Looking for** | A woman for a "discreet" relationship or 1-on-1 sex. |
| **Smoking/Drinking** | I'm a non-smoker/I'm a light/social drinker |

**Other Sites**

"Dating"
FriendFinder

ALT.com (BDSM)

OutPersonals
(Gay Personals)

Amigos.com
(Spanish Personals)

Chinese
FriendFinder

5/8/2001 10.18 PM

p.3    000-000-0000    Oct 09 07 09:52a





X  SIGN ON   CHECK MAIL   CHAT NOW   PHOTOS   SEND CARDS   Hot Screensavers | Browser

**e⊗cite**   **inbox**

Hi LolaL_!
Update Profile
Sign Out

**Controls**
Back to Inbox
Compose Message
Empty Trash

**Folders:**
Inbox ▼

Address Book
Storage Limits
Subscriptions
Preferences
Help
Inbox Hub

**Communicate**
Send Free E-Cards
Mom's Day E-Cards
Chat Now!
U.S. Yellow Pages
Share Your Calendar
Send Money Online
New Excite Messenger

**Shortcuts**
Photo Personals
Music Radio
Find a Job
Horoscopes
Download MP3s
Shopping
Photo Search
Buy a Home

**Free E-Cards**
Cinco de Mayo

## Message 1 of 5

Delete | message or move to  CMARK ▼ | Move | Inbox | <Prev

Print It! | Download

**Date:** Mon, 07 May 2001 10:38:28 PDT          [Show full hear
**From:** paul699.6@adultfriendfinder.com [Add to Address Book]
**To:** LolaL_@excite.com
**Subject:** Lola. Are you for real?

A message from "paul699.6" to "LolaL":

Monday, May 07, 2001  13:03:21

Lola ....WOW

What else would a man want on a woman ..... .. the way you describe yourself you are
perfect woman!!!!!,  a perfect 10,  but is that possible? ...... Are you for real? "..... intellig
independent, compassionate, empathetic, brutally honest, somewhat non-judgmental....
incredibly Beautiful.......  In need to be pampered... comfortable in anything from Channe
jeans and a ponytail"

Some how I find contradictory your philosophy ("motto") "Don't give too much of yourself
withhold a little, keep them guessing" ......."they'll come back for more".... How could it b
possible for anybody to forget you!

Any way  the way you describe your ideal person I could fill those shoes  BUT I....  there
one item which might be conflictive., also I'm looking for Sensuous woman who enjoys
Love-Making to the fullest

Mother's Day
Tuba Day
Send a Hug

**Partners**
Save at 400+ stores!
Celebrity News
Get Free MP3s!

I live in a mansion, drive the best a sports car in the world (imho), travel around the world (business and pleasure) I have one of the  most exiting business (imho) it takes me from board rooms of NYC, Zurich, London to the Jungles of Central and South America, (have book publish on the subject) people consider me handsome (beauty is in the eye of the beholder),  intelligent,  cocky and down to earth (depends with whom) and  love a sensuc lady whom wants to be treated as such..

The conflictive item is I'm married , but as long you are  non-judgmental.... its ok with me

For a lady and a man that appear to have  it all!!......What are we looking for?  .  the pru thing would be to meet .and discuss it .., who knows we might find the solution? ........... I to meet you for a cup of coffee or a drink at your favorite place, as true feelings can only I discovered via an in person meeting where the eyes can tell it all. Lets see if our eyes me and there is chemistry....

Have a great day

Paul

This is a copy of my profile:
I'm 54, Married,

Successful and handsome executive work in New Jersey, live in Bucks County, work for  international company, which requires me to travel several times a year. I'm looking for a sensual women who enjoys LOVE-MAKING

to the fullest. , no strings just sex, good times, good memories and who knows eventually good friendship.

AGE: 54
LOCATION: Bedminster, New Jersey, United States

Sent On: May 7, 2001

********************************************************************

The preceding message was sent to you in response to your ad on the Adult Friend Finder(sm) web site located at:

http://adultfriendfinder.com

You may reply to this message, and our e-mail forwarding system will automatically strip away your real e-mail address, so you don't have to worry about it being revealed. However, you should be careful that you DO NOT INCLUDE A SIGNATURE BLOCK which would give away your real e-mail address.

5/8/2001 10:17 P1

g'd                    0000-000-000                              Oct  09  07 09:53a

Getting too many emails? You can block emails from standard members on your update page. This often greatly reduces the number of email you will receive while still letting people who really want to contact you do so.

Adult Friend Finder(tm) does not monitor user e-mail and cannot be held responsible for the contents of any mail you receive through this system.

New! View and score thousands of nude photos and test yours at LikeMyNudePhoto.com located at http://likemynudephoto.com

Buy your Adult Love Supplies at the Adult Friend Finder store - adult videos, toys, leather and fetish products, CDs, lingerie, condoms, magazines, and more! Updated frequently! Direct URL: http://store.adultfriendfinder.com/

Why not suggest an online CHAT meeting at Adult Friend Finder
****************************************************

| ▶ Print it! | | Download |
|---|---|---|

| Delete | message or move to | CMARK ▼ | Move |

| kanscno@adul... | Very sensual woman | 04/25/01 |

**Add to my Planner**    **Add Event** | **Add Contact** | **Add Task** | **Add Note**

Powered by InterMail from Software.com. Excite Voicemail is powered by magicTalk™, from General Magic, Inc., Anti-Spam Solution™ is powered by Brightmail, Inc.
©2001 At Home Corporation. All rights reserved. Excite, @Home, and the Excite and @Home logos are service marks or registered service marks of At Home in the U.S. and other countries. Disclaimer | Privacy Policy

of 3

5/8/2001 10:17 PM

## CERTIFICATION OF SERVICE

I, George Bochetto, Esquire, , hereby certify that I caused to be served a true and correct copy of the foregoing Defendant's Answer to Plaintiff's Complaint with New Matter and Counterclaims upon the following counsel via e-mail and U.S. Mail, first class service, postage prepaid:

Arnold I. Kalman, Esquire
245 South Hutchinson Street
Philadelphia, PA 19107
e-mail address: arnold.i.kalman@verizon.net

John B. Harris, Esquire
Stillman, Friedman & Shechtman, P.C.
425 Park Avenue
New York, NY 10022
e-mail address: jharris@stillmanfriedman.com


George Bochetto, Esquire

Date:    October 24, 2007

**OF COUNSEL:**
**Bochetto & Lentz, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

35