UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
: 
ZEICHNER ELLMAN & KRAUSE LLP, :
Plaintiff and Interpleader Plaintiff, :
: No. 07 Civ. 9521 (JGK)(MHD)
:
– against – : **ECF Case**
:
:
KATHY COKUS, Defendant and Interpleader :
Defendant, and OCTAVIO PENA, Interpleader :
Defendant. :
:
-------------------------------------- X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COKUS' MOTION TO
DISMISS ON GROUNDS OF PRIOR ACTION PENDING, AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION TO DEPOSIT FUNDS INTO COURT REGISTRY**




STILLMAN, FRIEDMAN & SHECHTMAN, P.C.
425 PARK AVENUE
NEW YORK, NEW YORK 10022
(212) 223-0200

*Attorneys for Plaintiff Zeichner Ellman
& Krause LLP*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 7

    Point I.  The Colorado River Standards Militate
Against Abstention and Require Denial of This Motion ........................................................... 7

        A.    Assumption of Jurisdiction Over the Disputed Funds ............................... 8

        B.    "Inconvenience" of Federal Forum ........................................................... 9

        C.    Avoidance of Piecemeal Litigation ......................................................... 10

        D.    Order in Which the Actions Were Filed ................................................. 11

        E.    The Law That Provides the Rule of Decision ......................................... 13

        F.    Balancing of Factors ................................................................................ 14

    Point II.  The Court Should Grant Zeichner's Cross-Motion For
Leave Pursuant to Rule 67 to Deposit $499,766.93 Into The Registry .................................... 14

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

Bethlehem Constr. Co. v. Lehrer/McGovern Inc.,
   800 F.2d 325 (2d Cir. 1986).................................................................7, 13

Colorado River Water Conservation Dist. v. United States,
   424 U.S. 800 (1976)......................................................................2, 7-10, 14

De Cisneros v. Younger, 871 F.2d 305 (2d Cir. 1989).........................................8

FDIC v. Four Star Holding Co., 178 F.3d 97 (2d Cir. 1999)...............................7,8

Hatfield v. Herz, 9 F. Supp. 2d 368 (S.D.N.Y. 1998)..........................................13

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
   460 U.S. 1 (1983)...............................................................................8, 12-14

SST Global Tech., LLC v. Chapman,
   270 F. Supp. 2d 444 (S.D.N.Y. 2003)..................................................10, 12

Tarka v. Greenfield Stein & Senior, LLP, 2000 WL 1121557,
   (S.D.N.Y. Aug 8, 2000) ..............................................................................11

United States ex rel. Cokus v. Bristol Myers Squibb, Civil Action
   No. 01-11627-RGS, (D. Mass) .....................................................................3

Viacom Int'l v. Kearney, 1999 WL 92601 (S.D.N.Y. Feb 22, 1999)..................13

Village of Westfield v. Welch's, 170 F. 3d 116 (2d Cir. 1999).............................9

Woodford v. Community Action Agency of Greene County, Inc.,
   239 F.3d 517 (2d Cir. 2001).............................................................. 8-11, 14

World Wrestling Entm't Inc. v. Jakks Pacific, Inc.,
   425 F. Supp. 2d 484 (S.D.N.Y. 2006).................................................9, 10, 14

**CODES**

New York Lawyer's Code of Professional Responsibility, DR 9-102 ...............10

**RULES**

Fed. R. Civ. P. 22...............................................................................................14

Fed R. Civ. P. 67..........................................................................................14, 15

Plaintiff and interpleader plaintiff Zeichner Ellman & Krause LLP ("plaintiff" or "the Zeichner firm") respectfully submits this memorandum of law in opposition to defendant Kathy Cokus' motion to dismiss based on the existence of an alleged "prior action pending," and in support of its cross-motion to deposit funds into the Court Registry by way of interpleader. As set forth below, this Court should deny Cokus' request to abstain because New York is the only forum that has acknowledged jurisdiction over all parties; the funds that are in dispute are located in New York; the law in dispute relates to the rights and obligations of a New York law firm; and, indeed, there was no true "prior action pending" insofar as plaintiff filed this lawsuit before Cokus sought substantive relief against it in a Pennsylvania state court.

## PRELIMINARY STATEMENT

This litigation involves two distinct issues. First, whether the Zeichner firm, a New York City limited liability law partnership, is entitled to its contractually-agreed contingent fee for representing Cokus since 2001 in a successful *qui tam* lawsuit against a large pharmaceutical company. Although Cokus concedes she promised the Zeichner firm a 37 ½ percent contingent fee interest in the *qui tam* recovery and although the Zeichner firm recently received on Cokus' behalf a more than $4 million settlement, she now seeks to take the firm's fee for her own based on strained accusations that it acted faithlessly. This contractual claim, and Cokus' various purported arguments against payment, reflect the totality of the dispute between the Zeichner firm and Cokus.

The second issue relates to the Zeichner firm's possession in its New York trust account of an additional 12 ½ percent share of the $4 million Cokus recovery, funds that are in dispute between Cokus and her former friend and advisor, Octavio Pena. The Zeichner firm is a mere stakeholder in these funds and, accordingly, now seeks leave to deposit in the Court Registry the

sum of $499,766.93, plus interest earned thereon, to permit distribution to the appropriate claimant upon the Court's resolution of the issues between Cokus and Pena.

Despite having purposefully come to New York to retain a New York law firm to represent her and although the Zeichner firm never set foot in Pennsylvania in representing her, Cokus now urges this Court to dismiss this case because of the pendency of a supposedly earlier-filed action in state court in Bucks County, Pennsylvania. But Cokus does not and cannot demonstrate the "exceptional circumstances" required by the *Colorado River* abstention doctrine to dismiss this diversity action in favor of her "parallel" action against the Zeichner firm and one of its partners in Pennsylvania. As outlined below, each factor identified by the U.S. Supreme Court in *Colorado River* weighs against abstention: (1) the funds in dispute are located in New York, as required by New York's Code of Professional Responsibility; (2) New York is not an "inconvenient" forum, particularly inasmuch as New York has acknowledged jurisdiction over all parties, Pena is prepared to proceed here and Cokus lives less than 80 miles from this Court; by contrast, the Zeichner firm has no jurisdictional contacts with Pennsylvania; (3) given that all issues between the parties can be resolved in this forum, no "piecemeal" litigation will result from the pendency of this action; (4) contrary to the essence of the "prior action pending" argument made by Cokus, the substantive claims between her and the Zeichner firm were indisputably brought first in **New York**, not Pennsylvania; and (5) the dispute between Cokus and the Zeichner firm involves principally questions of New York law and ethics.

Cokus' motion is without legal or equitable merit, and should be denied.

## STATEMENT OF FACTS[1]

On or about July 16, 2001, the Zeichner firm and Cokus entered into a written contingent fee agreement for legal services (the "Fee Agreement"), pursuant to which the Zeichner firm agreed to represent Cokus in connection with a potential federal False Claims Act *qui tam* action (the "*qui tam*" action) that Cokus contemplated against her former employer, Bristol-Myers Squibb Co. ("BMS"). (Complaint ¶ 7) In exchange for the Zeichner firm's agreement to represent her, Cokus agreed that the Firm would be entitled to 37.5 percent of any recovery in the matter (after recouping its disbursements), and that the Firm was entitled to take its fee and disbursements directly from the proceeds of any settlement (the "Fee Agreement"). A copy of the Fee Agreement is annexed as Exhibit A to the Complaint. For the ensuing six years, the Firm represented Cokus' interests in the resulting case entitled *United States ex rel. Cokus v. Bristol Myers Squibb*, Civil Action No. 01-11627-RGS, in the United States District Court for the District of Massachusetts, ultimately helping her to win a significant share of the relators' proceeds. (Complaint ¶ 8)

In September 2007, the Firm informed Cokus that she would shortly receive approximately $4.1 million as her relator's share with respect to the settlement of the *qui tam* action. After the Firm informed Cokus of the impending recovery, she for the first time disputed the Firm's right to its fee under the Fee Agreement and demanded that the Firm hold its entire earned fee in escrow pending resolution of the purported dispute. The Firm advised Cokus that it considered her position without merit, but agreed to retain its earned fee in escrow based on her claim that the totality of its fee was disputed. (Complaint ¶¶ 9-10)

On October 23, 2007, the Zeichner firm received the proceeds of the settlement of the federal *qui tam* action ($4,005,229.67) by wire transfer into its attorney trust account in New York

---

[1] This Statement of Facts is based on the Complaint in this matter, filed on October 25, 2007, together with the accompanying declaration of Stephen F. Ellman, dated November 29, 2007 ("Ellman Dec.")

3

City (the "Trust Account"). (Complaint ¶ 11) Promptly thereafter, the Firm wire-transferred approximately $2 million, representing 50 percent portion of the settlement, to the New York bank account designated by Cokus. (Ellman Dec. ¶ 8) The Firm retained the Firm's contingent fee of $1,506,395.01 (including $7,094.21 in disbursements) in the Trust Account. (*Id.*)

In addition, upon the direction of Cokus and her former friend and advisor, Octavio Pena, who claims entitlement under a written agreement to a 12 ½ percent share of Cokus' recovery, the Firm has not distributed to either Cokus or Pena the sum of $499,766.93 and currently retains these funds in its Trust Account. (*Id.*)

On October 24, 2007, promptly after receiving the proceeds of the *qui tam* settlement, the Firm filed this lawsuit for Cokus' breach of contract in refusing to pay its fee and for a declaration that the Firm is legally entitled to $1,506,395.01 in the Trust Account in satisfaction of its interest in the *qui tam* settlement, plus applicable interest and other appropriate costs. The Zeichner firm also filed an interpleader claim with respect to the 12 ½ percent share of the proceeds disputed between Cokus and Pena.

<u>The Pennsylvania State Case</u>

In September 2007, after learning that Cokus was denying any obligation to pay Pena a portion of her not-yet-received settlement, the Firm advised both Cokus and Pena that it could not represent either one in connection with this dispute. Thereafter, on September 28, 2007, before the settlement funds had been paid, Pena sued Cokus in the state court in Bucks County, Pennsylvania seeking, *inter alia*, a declaration that he was entitled to 12.5 percent of the settlement upon its receipt. The Zeichner firm was not named as a party in that pleading. (Ellman Dec. Ex. B)

4

On October 11, 2007, Cokus filed with the Bucks County court a bare summons that purported to name the Zeichner firm and one of its partners, Nathan Schwed, as Additional Defendants. (Ellman Dec. Ex. C) She did not include a pleading or any substantive allegations against either of these additional defendants. That bare summons was not served upon the defendants pursuant to Pennsylvania law until October 26, 2007, still without any pleading. (*Id.*)

It was not until October 30 -- after the filing of the Firm's Complaint -- that Cokus first filed and served a pleading purporting to set forth substantive claims against either the Zeichner firm or Schwed. (Ellman Dec. ¶ 7 and Ex. D) In addition to the rote arguments that the Firm's contingent fee percentage was excessive and unreasonable, and that the Firm did little to earn its fee because the federal government handled the litigation against BMS, Cokus appears to argue that the Zeichner firm acted improperly because, before Cokus retained the Firm in 2001, the Firm had drafted a letter-agreement at the request of Cokus' friend and advisor, Pena, which provided what Pena said were the terms of his separate agreement with Cokus to receive 12.5 percent of any Cokus recovery in the action. (Ellman Dec. ¶ 3)[2]

The Zeichner firm has no first-hand knowledge of whether Cokus knowingly and voluntarily agreed to compensate Pena for his assistance to her, but it did receive a copy of the signed agreement and believed at all times until 2007 that Cokus and Pena had such an agreement. Nonetheless, Cokus also faults the Firm for telling Pena that a settlement had been achieved, apparently arguing that had this "confidence" not been disclosed, Cokus could have obtained the disputed 12.5 percent and diverted it before Pena was ever aware that any right he had to these funds had been compromised. (Ellman Dec. ¶ 5)

---

[2] Though not relevant for purposes of this motion to dismiss, the Zeichner firm denies any impropriety arising from its mere drafting of the purported Cokus-Pena agreement. Significantly, there is no allegation that the Zeichner firm played any role in the negotiation or execution of the Cokus-Pena agreement, nor does Cokus allege that the Zeichner firm counseled her with respect to her understanding with Pena. Rather, Cokus appears to claim that this letter-agreement was "secret" and that Pena somehow tricked her into signing it.

5

In response to its receipt of the Pennsylvania action, on November 19, 2007, the Zeichner firm and Schwed filed Preliminary Objections asserting, *inter alia*, the absence of personal jurisdiction over them in that State. In those objections (Ellman Dec. Ex. E), the Firm and Schwed evidence that they never came to Pennsylvania with respect to the representation of Cokus, never availed themselves of the benefits of Pennsylvania law and do not generally do business in that State. In contrast, by filing the instant motion to dismiss without raising any issue of *in personam* jurisdiction, Cokus has waived her right to object to New York as an appropriate forum to hear her claims and defenses. It is also noteworthy that Pena, who began the Pennsylvania action, has appeared in New York without objection.

Finally, although Pennsylvania law appears to permit discovery demands to be made immediately upon filing an action, there has been no substantive discovery exchanged in the Pennsylvania case, no depositions taken and no conferences with the Pennsylvania court. Notwithstanding the unsupported claim by Cokus that the Pennsylvania case is far ahead of this one, the fact is that the motion to dismiss by the Zeichner firm and Schwed in Pennsylvania is in precisely the same procedural posture as Cokus' motion to dismiss in this case, with the significant difference that Cokus does not claim this Court lacks jurisdiction over any aspect of the claims between the parties. (Ellman Dec. ¶ 12)

## ARGUMENT

### Point I

### THE *COLORADO RIVER* STANDARDS MILITATE AGAINST ABSTENTION AND REQUIRE DENIAL OF THIS MOTION

Contrary to the conclusory argument in Cokus' brief, the Court should not dismiss this action based on what Cokus characterizes as the "prior action pending" doctrine[3], and should instead conclude that her motion fails to satisfy the exacting standards for a federal court to abstain in favor of a prior pending state action, as detailed in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). As construed by the Second Circuit, the relief sought by Cokus can only be granted upon the movant's passing a stringent test:

> Abstention is an *extraordinary and narrow* exception to a federal court's duty to exercise its jurisdiction. The Supreme Court has recognized that courts should abstain from the exercise of jurisdiction only in the *exceptional* circumstances where the order to the parties to repair to state court would clearly serve a countervailing interest.

*FDIC v. Four Star Holding Co.*, 178 F.3d 97, 1010 (2d Cir. 1999) (emphasis added).

Where, as here, there is no question of jurisdiction in the federal court (both Cokus and Pena having raised no objection to either subject matter or personal jurisdiction), "federal courts have a '*virtually unflagging obligation*' to exercise that jurisdiction." *Bethlehem Constr. Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 (2d Cir. 1986) (quoting *Colorado River*, 424 U.S. at 817-18) (emphasis added). In determining whether a case presents the "exceptional circumstances" needed for *Colorado River* abstention, a district court should apply the following factors:

---

[3] Where parallel litigations are in state and federal courts, the so-called "first-filed" doctrine applicable to parallel *federal* litigations does not apply. Different standards and policies are implicated when federal actions proceed in parallel. *See, e.g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). ("As between *federal district courts*, ... the general principle is to avoid duplicative litigation.") (emphasis added).

7

> (1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights.

*Four Star Holding Co., supra*, 178 F.3d at 101 (quoting *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)).

Of these factors, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the factors counseling against that exercise is required. *Only the clearest of justifications will warrant dismissal.*" *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted) (emphasis in original). Indeed, the task in *Colorado River* abstention cases "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). Finally, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522 (citations omitted). As set forth below, Cokus cannot meet her heavy burden of invoking *Colorado River* abstention in light of these factors, and there is no basis for court to depart from its "unflagging obligation."[4]

### A. Assumption of Jurisdiction Over the Disputed Funds

With respect to the first factor, assumption of jurisdiction over a *res*, Cokus tacitly concedes, as she must, that the disputed funds in this case are located in New York and that it was contemplated under the Fee Agreement that any recovery would be sent to, and distributed

---

[4] Cokus has failed to submit any affidavit or declaration presenting facts she wishes to be considered, but rather has improperly used her memorandum of law as a vehicle to make factual allegations and to proffer documents she apparently believes the Court should consider. This evidentiary failure is, by itself, fatal to her attempt to meet her burden.

8

from, the Zeichner firm in New York. Cokus asserts without any authority that this fact is "insignificant" where the *res* is money, which Cokus incorrectly asserts is not specific or unique property "rooted in this jurisdiction." Cokus Mem. at 6. However, DR 9-102 of the New York Code of Professional Responsibility (the "Code") requires that where, as here, a lawyer comes into possession of disputed funds incident to the practice of law, the lawyer "shall maintain such funds in a banking institution *within the State of New York.*" DR 9-102 (B) (emphasis added). Not only does this requirement "root" specific funds in New York, but the Code treats disputed funds as a single, undivided *res*, stating that "[f]unds belonging *in part* to a client or third person and *in part* presently or potentially to the lawyer or law firm shall be kept in [a special account in New York]." *Id.* (emphasis added).

Even if Cokus is correct that money is "fungible" and therefore no true *res* exists in this case, that argument does not avail her. The law is clear that "the absence of a *res* point[s] toward exercise of federal jurisdiction." *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (brackets in original). That is because "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522.

**B.    "Inconvenience" of Federal Forum**

The next factor under *Colorado River* is the inconvenience of the federal forum. *See World Wrestling Enter., Inc. v. Jakks Pacific, Inc.*, 425 F. Supp. 2d 484, 511-12 (S.D.N.Y. 2006)(cited in Cokus Mem. at 5). Ignoring the plain language of the doctrine, Cokus irrelevantly asserts that Bucks County is "the *most convenient*" because two out of three parties reside in that area,[5] and speculates that Zeichner, as a law firm, "may be better able to travel to Bucks County

---

[5]    Immediately after arguing that Zeichner and its partner, Schwed, are essentially the same for purposes of her "two out of three" analysis, Cokus claims that because she named Schwed as a party in Bucks County, but has not yet named him as a party in New York (though she obviously could), Bucks County must be favored as a forum. Cokus Mem. at 7. Cokus' twisted logic must be rejected.

9

than the individuals are able to travel to New York." Cokus Mem. at 6. Tellingly, however, Cokus cannot demonstrate, as she is required to do, that this Court is an *inconvenient* forum for her. Indeed, both Cokus and Pena live within 80 miles of the New York court (and both currently have Pennsylvania lawyers admitted to practice in New York). *See* Ellman Dec. ¶ 13. This Court has previously held that parties located in similar close proximity to a federal forum are not "inconvenienced" for purposes of this factor. *See Jakks*, 425 F. Supp. 2d at 512 (distance between federal forum in New York and state forum in Connecticut not inconvenient for purposes of *Colorado River* analysis); *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 465 (S.D.N.Y. 2003) (same with respect to distance between federal forum in New York and state court in Delaware).

Moreover, Cokus knowingly contracted with a New York law firm to represent her and traveled to New York pursuant to that relationship. By contrast, the Firm never set foot in Pennsylvania in connection with the representation of Cokus and, as a New York law firm, is not generally doing business in that State. Inasmuch as the Firm has asserted a lack of jurisdiction over it in Pennsylvania, while both Cokus and Pena have acknowledged New York jurisdiction, New York is the only forum that can be viewed as appropriate and available for resolving all disputes. Even were New York not demonstrably more appropriate as a forum for all parties, where the federal and state forums are equally convenient, that factor "favors retention of the case in federal court." *Woodford*, 239 F.3d at 523. *See Jakks*, 425 F. Supp. 2d at 512; *Global Tech*, 270 F. Supp. 2d at 465.

C. **Avoidance of Piecemeal Litigation**

The "next factor invokes the obvious desire to avoid piecemeal litigation." *Jakks*, 425 F. Supp. 2d at 512. As the Second Circuit has noted:

10

> The primary context in which we have affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one party seeks a declaration of nonliability *and the other potentially liable defendants are not parties*.

*Woodford*, 239 F.3d at 524 (internal citations omitted) (emphasis added). *See also Tarka v. Greenfield Stein & Senior, LLP*, 2000 WL 1121557, at *5 (S.D.N.Y. Aug. 8, 2000) ("[c]ourts have been careful . . . to draw a distinction between merely duplicative litigation and potentially piecemeal litigation, noting that the latter is a product of additional parties").

We submit that there is no risk of piecemeal litigation here because all relevant parties are before the Court in New York[6] (as are the funds in dispute), and there are no parties or issues in the Pennsylvania proceeding that cannot be raised and adjudicated in the New York action. Moreover, given that no discovery has been exchanged in the Pennsylvania action and no depositions taken, there should be no need to duplicate discovery in that proceeding if the New York case goes forward. There is no argument -- nor can there be -- that a judgment of this Court would not be subject to *res judicata* or collateral estoppel treatment by the Pennsylvania court.

**D.     Order in Which the Actions Were Filed**

Although Cokus makes much of the fact that Pena sued Cokus first in Pennsylvania, the substantive claims that are at issue here (breach of contract between Cokus and the Zeichner Firm and the interpleader of the Pena-Cokus disputed funds) were indisputably first raised in New York on October 25, 2007 (*see* Ellman Dec. ¶¶ 9-10). Although Cokus filed a bare

---

[6] As noted above, the only different party between the cases is the Zeichner firm's partner, Schwed, who has asserted that he is not subject to jurisdiction in Pennsylvania, but who is obviously subject to jurisdiction in New York.

11

summons in Pennsylvania on October 11, 2007, which stated no claims against the Zeichner firm or Schwed, she did not serve the summons pursuant to Pennsylvania law until October 26, 2007 and did not file or serve her third-party complaint until October 30, 2007. Given that Pena himself -- who actually brought the first action in Pennsylvania[7] -- has expressed no opposition to the primacy of the New York action, Cokus' reliance on the "prior action pending" doctrine to block pursuit of claims in New York rings hollow.

Even were it otherwise, courts have held that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made on the two actions." *Moses H. Cone*, 460 U.S. at 21. Although Cokus falsely asserts—without support or citation—that the Pennsylvania litigation has "progressed substantially farther" (Cokus Mem. at 6), there has been little or no substantive progress at all in the Pennsylvania case (notwithstanding the exchange of extreme allegations between Pena and Cokus). The Zeichner firm has been a party in the Pennsylvania case for almost exactly the same length of time as Cokus has been a party to the New York case. No discovery has been exchanged and the Zeichner Firm made a prompt, substantive motion to dismiss the Pennsylvania case for lack of jurisdiction, a motion which is pending (but which obviously need not be resolved if the case proceeded in New York).

Although it is true that the action brought by Pena against Cokus in Pennsylvania has been pending for approximately 30 days longer than the New York case, inasmuch as no substantive discovery has been exchanged and, based on the papers filed in this case, Pena is

---

[7]   It is worth noting that, while Pena sued first in Pennsylvania, he did so weeks before the payment by the federal government of the settlement funds gave rise to a live controversy, *i.e.*, the obligation of Cokus to pay. Put differently, Pena was seeking a declaration of rights and obligations in advance of the time when such rights and obligations actually crystallized. The Zeichner Firm was the first to sue following the existence of a live controversy.

12

prepared to proceed in New York as an alternative to Pennsylvania, this factor is, at worst, neutral, and does not support abstention.

### E.  The Law That Provides the Rule of Decision

There is no apparent dispute that the Zeichner firm and its lawyers are governed by the Code, particularly inasmuch as there is no claim that the Firm ever took any substantive action in Pennsylvania or held itself out as subject to the laws of that State. Rather, both the contractual claim asserted by the Firm and most of the apparent arguments against payment (excessive fee, breach of the duty of confidentiality) are clearly governed by New York law regulating New York lawyers. Indeed, Cokus extensively quotes the New York Code of Professional Responsibility in her state-court complaint. *See* Ellman Dec. Ex. D. As to the other arguments, it is significant that, notwithstanding Cokus' resort to claims purportedly arising under Pennsylvania law, there is no claim that the Firm's drafting of the Cokus-Pena agreement had any connection to Pennsylvania (nor does Cokus claim such a connection with regard to Pena's alleged trickery of her).

Even were the allegations different, because "state law provides the rule of decision in all diversity cases . . . only 'in some rare circumstances [may] the presence of state law issues weigh in favor of . . . surrender' of federal jurisdiction." *Bethlehem Constr.*, 800 F. 2d at 238 (quoting *Moses H. Cone*, 460 U.S. at 26). "In order for a case to fall under this 'rare circumstances' exception, the claim before the court must present 'novel or unique issues of law.'" *Viacom Int'l v. Kearney*, 1999 WL 92601 (S.D.N.Y. Feb. 22, 1999) (quoting *Bethlehem Contr.*, 800 F. 2d at 238). Cokus has "failed to demonstrate that this action presents novel or unique issues of state law that would require priority of a state court decision." *Hatfield v. Herz*, 9 F. Supp. 2d 368,

13

374 (S.D.N.Y. 1998). Accordingly, "[t]his Court need not wait for the state court's explication" of the state law issues (*id.*), and abstention is improper here.

### F.   Balancing of Factors

As noted previously, in conducting a *Colorado River* abstention analysis, "[n]o one factor is necessarily determinative . . . [but] . . . [o]nly the clearest of justifications will warrant dismissal." *Woodford*, 239 F.3d at 522. The task "is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26 (emphasis in original). All of the factors identified and discussed above militate in favor of retaining jurisdiction, and Cokus has failed to provide the Court with any justification for surrendering its jurisdiction. *See, e.g., Woodford*, 239 F.3d at 522-26; *Jakks*, 425 F. Supp. 2d at 513-14.[8]

### Point II

### THE COURT SHOULD GRANT ZEICHNER'S CROSS-MOTION FOR LEAVE PURSUANT TO RULE 67 TO DEPOSIT $499,766.93 INTO THE REGISTRY

The Zeichner firm moves pursuant to Rule 67 of the Federal Rules of Civil Procedure to deposit into the Registry of the Court the sum of $499,766.93, which represents 12.5 percent of the *qui tam* recovery, plus the interest earned thereon. These funds do not belong to the Firm. Rather, Pena and Cokus each claim entitlement to those funds, with Pena claiming he is contractually entitled to this payment and Cokus claiming any promise she made to that effect is invalid. Obviously, if the Firm were to transmit these funds to either disputant, it would risk liability from the non-recipient. Accordingly, pursuant to Rule 22 of the Federal Rules of Civil

---

[8]   The Zeichner firm takes no position on the final factor, *i.e.*, whether the Pennsylvania forum can adequately protect its rights. Plainly, the New York court is better versed in the rights and responsibilities of New York lawyers to their clients than is the tribunal in Bucks County.

14

Procedure, the Firm has asserted a claim in interpleader against Pena and Cokus. *See* Complaint ¶¶ 16-17, 27-31.

 Rule 67 of the Federal Rules of Civil Procedure provides that

> [i]n an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money ..., a party, upon notice to every other party, and by leave of the court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing.

Fed. R. Civ. P. 67. By the filing of this cross-motion, the Firm has provided the requisite notice to the other parties in this case of its intent to deposit with the Court the sum of $499,766.93, plus the interest earned thereon, and now seeks, and is entitled to, an Order from the Court pursuant to Rule 67 granting it leave to do so.

## CONCLUSION

 Accordingly, the Court should enter an Order: (a) denying Cokus' motion to dismiss on the grounds of prior action pending; (b) granting the Zeichner firm's cross-motion to deposit funds into the Registry of the Court; and (c) awarding the Zeichner firm such other and further relief as is just and proper.

Dated: New York, New York
    November 29, 2007

             STILLMAN, FRIEDMAN & SHECHTMAN, P.C.

             By: s/John B. Harris
               John B. Harris (JH 4038)
             425 Park Avenue
             New York, New York 10022
             (212) 223-0200

             *Attorneys for Plaintiff Zeichner Ellman*
              *& Krause LLP*