# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | **No. 07-CIV-9521** |
| **ZEICHNER, ELLMAN & KRAUSE, LLP,** | : | |
| **Plaintiff and Interpleader Plaintiff,** | : | **DEFENDANT KATHY COKUS'S** |
| | : | **MEMORANDUM IN SUPPORT OF** |
| **v.** | : | **CROSS-MOTION TO DISMISS FOR** |
| | : | **LACK OF DIVERSITY JURISDICTION,** |
| | : | **REPLY MEMORANDUM IN SUPPORT** |
| **KATHY COKUS, Defendant and Interpleader** | : | **OF MOTION TO DISMISS DUE TO** |
| **Defendant, and OCTAVIO PENA, Interpleader** | : | **PENDENCY OF PRIOR ACTION, AND** |
| **Defendant.** | : | **OPPOSITION TO CROSS-MOTION** |
| | : | **TO DEPOSIT FUNDS** |

## I.    INTRODUCTION

The instant case should be dismissed and this dispute resolved through the Bucks County Action, which Pena earlier initiated and where all parties were earlier joined.[1]  First and foremost, this Court lacks diversity jurisdiction since two adverse parties, Pena and Cokus, are both Pennsylvania residents.  This Court is empowered, if not required, to realign the parties to defeat tactical efforts to manufacture diversity jurisdiction where ordinarily it would not lie.  The true alignment of the parties was reaffirmed when Pena filed his Complaint against Cokus in this action -- after Cokus filed her Motion -- and asserted no claims against, and even agreed with, ZEK.  Based on the absence of diversity jurisdiction, and without further analysis, Cokus's Motion to Dismiss should be granted and the entire case dismissed.[2]

But even if one were to assume that diversity jurisdiction existed, the prior pending action doctrine would require dismissal.  For the reasons described more fully below, the relevant factors

---

[1]      Cokus uses the abbreviations and defined terms of her Motion papers.

[2]      Cokus will be filing a Motion to Dismiss Pena's Complaint on this basis – which alone is sufficient – and others.

weigh in favor of proceeding in the Bucks County Action alone.  However, the Court need not reach this analysis.

Finally, ZEK's cart-before-the-horse effort to create jurisdiction by having funds deposited with the Court must fail.  Because the lack of diversity mandates dismissal, ZEK's Cross-Motion to Deposit Funds can be denied without further consideration.  But even apart from this ground for denial, the Cross-Motion must be dismissed because the Federal interpleader statute requires that the two parties contesting the disputed fund must be citizens of different states.  Cokus and Pena, however, are both Pennsylvania residents.  Moreover, the conditions for interpleader are not satisfied since ZEK is not being sued by either Cokus or Pena for the $500,000 to which both Cokus and Pena believe they are entitled.  Rather, Cokus and Pena are suing each other.  The Motion to Deposit is a ploy devoid of substance.

## II.    ARGUMENT[3]

### A.    The Dispute Should Be Adjudicated In The Pennsylvania State Court Because This Court Lacks Subject Matter Jurisdiction.

As ZEK alleges in its Complaint, both Cokus and Pena are Pennsylvania residents.  Complaint ¶¶ 2-3.  Nevertheless, Despite ZEK's naming Pena as a defendant in order to create diversity jurisdiction, Pena is properly aligned as a plaintiff, and therefore this case must be dismissed for a lack of diversity jurisdiction and permitted to proceed in Pennsylvania, where suit was first filed.  As Cokus explained in her opening papers, the Bucks County Action was initiated with Pena suing Cokus for a

---

[3]    Cokus disputes ZEK's retelling of the facts but does not see the necessity of contesting ZEK's declaration to the extent it addresses the validity of the parties' claims.  Since the Court is not being asked to adjudicate the validity of any claim, the attached pleadings are sufficient in that regard.  Cokus files herewith a Declaration of George Bochetto, Esquire ("Bochetto Declaration"), which addresses facts relevant to the issues before the Court.

fee he claims he earned as a private investigator. After Cokus filed the Motion to Dismiss Due to

Pendency of Prior Action, Pena repeated his claim against Cokus in a Complaint filed in this action.

See Pena's Answer and Complaint, attached hereto as Exhibit "A." Pena's filing confirmed the true

alignment of interests as Pena and ZEK v. Cokus. Moreover, it suggests collusion between ZEK and

Pena.[4]

As Cokus explained, after Pena sued her, she initiated suit against ZEK in the Bucks County

Action before ZEK filed the instant suit against Cokus. While both ZEK and Pena are adverse to

Cokus in both actions, ZEK and Pena are not adverse to each other. The only "claim" between them,

asserted in a backward effort to manufacture an argument for maintaining the case in this jurisdiction,

is ZEK's "interpleader" claim against Pena. Ironically, however this claim confirms that there is no

adverse interest between ZEK and Pena, for it asserts, in essence, that Cokus and Pena have a dispute

over $500,000, which ZEK is holding in escrow and to which ZEK has no claim or interest and which

ZEK therefore seeks to deposit with the Court. ZEK Complaint ¶¶ 16, 17, 27-31; 28 U.S.C. § 1335.

Moreover, in his Answer and Complaint and then in his Memorandum in Support of ZEK's Cross-

Motion, Pena even agrees that the money should be deposited with the Court. Thus, ZEK and Pena are

not even nominally adverse in the claim in which they placed themselves on both sides of the "v" in the

hope of manufacturing jurisdiction.

---

[4]     Though he started the Bucks County Action, Pena now agrees with ZEK's Cross-Motion that the disputed $500,000 should be deposited in this Court, not the Bucks County Court. Pena's agreement was evident in the attached Answer and Complaint and became even more explicit in his Memorandum of Law in Support of Plaintiff's Cross-Motion. Having the money here is intended by Pena to form the basis for an argument in the Bucks County Action that the dispute should be resolved here. Now that ZEK is in the picture, Pena has changed his mind regarding venue and believes that this jurisdiction would be more favorable than Pennsylvania.

In determining whether diversity jurisdiction exists, the Court will realign the parties in accordance with their interest.  In this regard, the Court of Appeals for the Second Circuit in *Maryland Casualty Co. v. W. R. Grace and Co.*, 12 F. 3d 617, 622 invoked Justice Frankfurter in *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941):

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.   It is our duty ... to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' ...Litigation is the pursuit of practical ends, not a game of chess.

In *Maryland Casualty*, the Second Circuit adopted a "collision of interests" analysis – somewhat broader than the "primary purpose" analysis of some jurisdictions – to determine whether parties should be realigned for jurisdictional analysis:

> Under this test courts require the existence of an actual, substantial controversy, or a collision of interests, *see Indianapolis,* 314 U.S. at 69, 62 S.Ct. at 68, but the conflict may in some cases concern an issue other than the so-called primary issue in dispute. [Citations Omitted.]   This approach is more flexible because it permits courts deciding whether diversity exists to consider the multiple interests and issues involved in the litigation.

The Second Circuit continued with commentary useful for applying the test:

> The purpose in realigning parties is to make sure that there is a *bona fide* controversy between, as the statute commands, citizens of different states.  In applying the collision of interests test therefore we must be mindful that actual and substantial conflicts in fact existed at the initiation of the lawsuit.   Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court.

See *Provenance Media Group, LLC v. Alibraheem*, slip op., 2007 WL 2701978 (2007 S.D.N.Y.) (applying collision of interest analysis.)

Here there can be no question that jurisdiction is lacking.  There are no adverse claims asserted between ZEK and Pena.  The interpleader claim is not adverse, stating, in essence, that of the $2

million ZEK holds in escrow, it has no claim to $500,000, and the real dispute is between Pena and

Cokus.  Scratch beneath its surface, and it entails an admission that it is Pena and Cokus who are

adverse and not ZEK and Pena.  Indeed, Pena concedes the interpleader count that ZEK purported to

bring against him, concluding in his Answer:

> WHEREFORE, Pena prays that the Court enter judgment permitting plaintiff to deposit
> into the Registry of the Court the sum of $499,766.93, which represents the 12.5% of
> the recovery to which Pena is contractually entitled by Cokus to receive.

Later, in his conclusory Memorandum in Support of ZEK's Cross-Motion, Pena was remarkably

compliant for an adversary:

> It is uncontested that the Court has jurisdiction over all parties and claims in
> this action.  There is no basis for the Court to dismiss this action in deference
> to the action pending in Pennsylvania state court under the abstention doctrine
> as articulated by *Colorado River Water Conservation District v. United States,*
> *424 U.S. 800 (1976).*  Accordingly, the Court should exercise the jurisdiction it
> has over this action and allow Plaintiff to deposit with the Court the funds to
> which Cokus and Pena each claim entitlement but to which Plaintiff has no
> claim.

Pena, having started suit in Pennsylvania, now prefers this jurisdiction.   Here there is a collusion, not a

collision, of interests.   This case must be dismissed in its entirety for a lack of subject matter

jurisdiction and allowed to proceed in the Court of Common Pleas of Bucks County, Pennsylvania,

where all parties to the dispute first became parties to a legal action.[5]

---

[5]    Although ZEK suggests here that it lacked the contacts with Pennsylvania
necessary for personal jurisdiction in Pennsylvania, the jurisdictional issue has been squarely
presented to, and will be decided by, the Pennsylvania court.

Nevertheless, for the Court's reference, some of ZEK's contacts with
Pennsylvania are identified in the accompanying Bochetto Declaration.

**B.    The Prior Pending Action Doctrine Recommends Dismissal.**

Even if diversity jurisdiction did exist, each of the factors of the prior pending action doctrine favor dismissal.

This Court has not assumed jurisdiction over a *res*.  See, *Ferguson v. Tabah*, 288 F. 2d 665, 671 (2nd Cir. 1961).  (For purposes of determining whether a state versus federal action should proceed, the court distinguishes between a court adjudicating the validity of a bloc of shares and a court actually taking control over the shares.)  That the settlement funds happen to be located in New York does not mean that this Court has actually entered an order that would assume jurisdiction over them.  Their location within a jurisdiction and a Court's assumption of jurisdiction over them are distinct.  *Id.*  As ZEK observes, ZEK is required to maintain disputed funds in an account, and even if the account is in New York, a final order in the Bucks County Action will function as a determination of how ZEK must dispose of the money.   Neither Court has assumed jurisdiction over the fund itself – although ZEK now **requests** that it assume jurisdiction over $500,000 of it.

ZEK is incorrect in its suggestion that the second factor, "the inconvenience of the federal forum," does not entail an analysis of the relative convenience of the two forums.   *Mouchantaf v. International Modeling and Talent Association*, 368 F. Supp. 2d. 303, 306 (S.D. N.Y. 2005) ("...**on balance**, the convenience factor slightly favors Arizona.")  Inconvenience is not an absolute, objectively measurable quality that either exists or does not exist, but is established as a matter of comparison.  *Id.*   The distance to New York, to say nothing of the difficulties and costs of traveling to and from New York as well as staying overnight in the city, create inconvenience when another forum is around the corner from two of three parties.  The Bucks County location does not impose the same travel costs and impediments as New York.

-6-

The desirability of avoiding piecemeal litigation is often paramount.  *Id.*  Contrary to ZEK, this factor does indeed involve avoiding duplicative litigation with the result of one party hoping to beat another in its favored forum and then heralding positive rulings as preclusive in the second forum. ZEK argues – strangely – as if there is some special value in having two forums adjudicate the same issues simultaneously.[6]   The Court recognized in *Mouchantaf, 368 F. Supp. 2d at 307*, citing the Second Circuit, that the proper analysis entails considerations of efficiency:

> Given the identity of issues in the state and federal actions, the existence of concurrent proceedings creates "the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first, [which would be] prejudicial, to say the least, to the possibility of reasoned decision making by either forum." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 211 (2d Cir.1985) (quoting *Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 567-68, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983)) (internal quotation marks omitted). Moreover, the potentiality for inconsistent dispositions of claims might "breed additional litigation on assertions of claim and issue preclusion," which would clearly be wasteful.  *Id.*

Additionally, as explained more fully below, ZEK is absolutely incorrect in its statement that "no discovery has been exchanged" in the Bucks County Action.  Thus, there can be no dispute but that this important factor favors dismissal.

Likewise, there can be no dispute about the order in which jurisdiction was obtained.  ZEK's reference to the initial Bucks County filing as a "bare summons" is of no moment.  Suit was initiated and "jurisdiction ... obtained" by this long established Pennsylvania procedure.   ZEK offers no authority or rationale for discounting it.

ZEK's statement that no "substantive progress" has been made and "no discovery has been exchanged" in the Bucks County Action is disingenuous.   In relation to discovery, the following has

---

[6]        Surely, if there were, it would be recognized when a Federal court is asked to dismiss one of two overlapping Federal suits.

occurred:

- Pena served a Notice of Deposition for Kathy Cokus, scheduling it for 11/2/07;

- On October 23, 2007, Pena served a Notice of Intent to Serve Subpoena, a procedure required under Pennsylvania rules, on a third-party, the Bucks County Adult Probation and Parole Department;

- On October 24, 2007, Cokus served on Pena her First Request for Admissions and a Request for Production of Documents related to the admissions;

- On October 29, 2007, Cokus served her First Request for Production of Documents on Pena;

- On October 29, 2007, Cokus served her First Request for Production of Documents Directed to Schwed and ZEK;

- On October 29, 2007, Cokus served her First Set of Interrogatories on Pena;

- On October 29, 2007, Cokus served her First Set of Interrogatories on Schwed and ZEK;

- Cokus also served her Second Request for Production of Documents on Pena;

- Cokus also served her Second Request for Production of Documents on Schwed and ZEK;

- On November 11, 2007, Pena served his First Request for Production of Documents on Cokus;

- On November 11, 2007, Cokus served her Second Request for Production of Documents on ZEK;

- On November 5, 2007, Cokus served her Third Request for Production of Documents on Pena;

- On December 4, 2007, Cokus produced document's in response to Pena's Request for Production;

- In addition, Pena has produced documents and answered Requests for Admission; and

- On or about December 5, 2007, Cokus filed a Motion to Compel directed

to ZEK for ZEK's failure to produce documents and answer interrogatories.

- On December 7, 2007, Cokus responded to 79 Requests for Admissions propounded by Pena.

Thus, discovery has indeed been served and is indeed being exchanged.   It is ZEK that, on the one hand, claims it has not been exchanged, and, yet, on the other, has stood in the way of its exchange and forced Cokus to file a Motion to Compel in the Bucks County Action.

In virtually all respects, jurisdiction was obtained in the Bucks County Action first.  All of the adverse parties were adverse parties in the Bucks County Action before they were parties here. Moreover, to the extent relative progress is a consideration, the Bucks County Action is "running well ahead" (See *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 840 (1983)) of the instant lawsuit, as the above paragraph indicates.

ZEK's argument that New York law provides the rule of decision because Cokus's Bucks County Complaint invokes the New York Code of Professional Responsibility in its recitation of the facts relies on a fatally narrow view.  First, ZEK's argument excludes all claims between Cokus and Pena – both those Pena asserted against Cokus and those Cokus asserted against Pena.  These claims, involving two Pennsylvania residents, are all based on Pennsylvania law.

With respect to ZEK, Cokus, does not bring a claim under New York's Code of Professional Responsibility.   Rather, she cites the Code as part of the factual background and brings claims for fraud, violation of Pennsylvania's Unfair Trade Practices Act, civil conspiracy, breach of fiduciary duty, breach of contract, professional negligence, declaratory judgment, preliminary injunction, indemnification, and accounting.  Apart from the interpleader count, ZEK has a single breach of contract claim against Cokus.  Cokus was all the while residing in Pennsylvania, and although ZEK's

office is in New York, the *qui tam* action for which ZEK purported to represent Cokus was pending in Massachusetts, a jurisdiction where ZEK attorneys and Schwed, in particular, are not admitted.   Thus, the one factor that ZEK might cite to justify the application of New York law – that is, ZEK's retention as New York attorneys for a case pending in New York – is non-existent.   Further, the retainer agreement between Cokus and ZEK, attached to ZEK's Memorandum, does not include a choice-of-law provision selecting New York law.   Thus, even if there are issues over what substantive law applies to at least some claims, the bulk of them are undoubtedly governed by Pennsylvania law.

**E.    ZEK's Cross-Motion to Deposit Funds Should Be Denied.**

ZEK's Motion to Deposit Funds can be dismissed without extensive analysis.   As an initial matter, the Motion to Deposit Funds must be dismissed because this Court, as explained above, lacks jurisdiction over the case as a whole.   But even if one were to go further, the Motion must be dismissed because the Court lacks jurisdiction specifically over ZEK's interpleader claims.   The Federal interpleader statute requires diversity of citizenship between the adverse parties contesting their right to the fund.   28 U.S.C. § 1335 confers jurisdiction on the Federal Courts for interpleader claims if  "two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property...."  Because Cokus and Pena are both Pennsylvania citizens, there is no federal jurisdiction over the interpleader claim.

Moreover, even if this Court had jurisdiction, this matter is not a proper one for interpleader. ZEK is not being sued by either Cokus or Pena to deliver the $500,000 to one or the other.   Rather, in the Bucks County Action, Cokus is seeking to enjoin ZEK from making a distribution pending the outcome of the Cokus/Pena dispute.   Thus, ZEK is not being subjected to multiple, conflicting claims for a fund in its possession.   As the Court stated in *Hartford Life Insurance Co. v. Einhorn*, 452 F.

Supp. 2d 126, 129 (E.D. N.Y. 2006):

> The federal interpleader statute is a remedial device "designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." *Fidelity Brokerage Servs., LLC v. Bank of China,* 192 F.Supp.2d 173, 177 (S.D.N.Y.2002) (citing *Wash. Elec. Coop. v. Paterson, Walke & Pratt, P.C.,* 985 F.2d 677, 679 (2d Cir.1993)); Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed.2001).

ZEK's interpleader is simply a ploy, suggestive of collusion between Pena and ZEK, to secure this Court's involvement in what started as the Bucks County dispute. If funds were deposited here, ZEK and Pena (who, ironically, initiated the Bucks County Action) would have a new fact to bring to the attention of the Bucks County Court in an effort to dismiss or stay that action. If the Motion to Deposit is granted, perhaps they intend to argue (putting the cart before the horse) that this Court has assumed jurisdiction over a *res*. But, in the end, the proper place for adjudicating the Pena/Cokus dispute and depositing any funds (if, indeed they need to be deposited) is in the jurisdiction of their (non-diverse) residence.

## III. CONCLUSION

For the foregoing reasons, Cokus's Motion to Dismiss should be granted and ZEK's Motion to Deposit Funds should be denied.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

/s/

By:_____
George Bochetto, Esquire
David J. Perlman, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

Date: December 10, 2007                    *Attorney for Defendant Kathy Cokus*

## CERTIFICATE OF SERVICE

I, George Bochetto, Esquire, hereby certify that I caused to be served a true and correct copy of

the foregoing Defendant Kathy Cokus's Memorandum in Support of Cross-Motion to Dismiss for Lack

of Diversity Jurisdiction, Reply Memorandum in Support of Motion to Dismiss Due to Pendency of

Prior Action, and Opposition to Cross-Motion to Deposit Funds upon the following counsel via

overnight mail:


John B. Harris, Esquire
STILLMAN, FRIEDMAN & SHECHTMAN, P.C.
425 Park Avenue
New York, NY 10022


Arnold I. Kalman, Esquire
245 South Hutchinson Street
Philadelphia, PA 19107


**BOCHETTO & LENTZ, P.C.**


/s/
By:_____
George Bochetto, Esquire

Date: December 10, 2007