UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZEICHNER, ELLMAN & KRAUSE, LLP,<br>Plaintiff and Interpleader Plaintiff,<br><br>v.<br><br>KATHY COKUS, Defendant and Interpleader Defendant, and OCTAVIO PENA, Interpleader Defendant. | No. 07-CIV-9521<br><br>DEFENDANT KATHY COKUS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CROSS CLAIM OF OCTAVIO PENA |

## I. INTRODUCTION

After initiating an action on September 29, 2007 in the Court of Common Pleas of Bucks County, Pennsylvania ("Bucks County Action"), Octavio Pena ("Pena"), filed his Amended Cross-Claim against Cokus in this action based on precisely the same underlying facts. The Cross-Claim must be dismissed at the outset because this Court lacks diversity jurisdiction. No further analysis is necessary.

Nevertheless, even if this Court had diversity jurisdiction, the prior pending action doctrine would require dismissal.

Moreover, even if neither of those doctrines favored dismissal, each Count must be dismissed for failure to state a claim. Pena's contract claim must be dismissed because a contract to provide investigative services on a contingency fee basis is illegal. His unjust enrichment claim must be dismissed because he cannot avoid the illegality of investigative services rendered under a contingency contract by relying on an alternative unjust enrichment theory. The injurious falsehood count must be dismissed because the privileged statements Cokus made to her attorneys in connection with asserting her legal rights and her filing a lawsuit do not fall within

the ambit of this tort. Finally, "prima facie tort" is not a cause of action.

In his effort to persist with the instant lawsuit irrespective of the merits of the arguments presented by this Motion, Pena will likely -- and incorrectly -- argue that the Motion is untimely. However, if the Amended Cross-Claim was served by ECF on November 20, 1007, an answer would be due on December 13, 2007. Twenty days from November 20, would be December 10, 2007, and an additional three days would be added pursuant to Fed. R. Civ. P. 6(e) and 5(b)(3)(D). The latter specifically applies to service by electronic means.

## II.    ARGUMENT

### A.    The Dispute Should Be Adjudicated In The Pennsylvania State Court Because This Court Lacks Subject Matter Jurisdiction.[1]

As Pena alleges in his Cross Claim, both Cokus and Pena are Pennsylvania residents. Cross Claim, attached hereto as Exhibit "A," ¶¶ 1, 8. Nevertheless, Despite Plaintiff Zeichner, Ellman & Kraus, LLP ("ZEK") naming Pena as a defendant in order to create diversity jurisdiction, Pena is properly aligned as a plaintiff. As a consequence, this case must be dismissed for a lack of diversity jurisdiction and permitted to proceed in Pennsylvania, the forum Pena first selected. The Bucks County Action was initiated when Pena sued Cokus for a fee he claims he earned as a private investigator.[2] After ZEK initiated this action and after Cokus filed in this action a Motion to Dismiss Due to Pendency of Prior Action, Pena repeated his Pennsylvania claim against Cokus in the Cross Claim filed in this action. Pena's filing

---

[1] Cokus also made this argument in her previously filed Motion to Dismiss for Lack of Diversity Jurisdiction.

[2] The facts concerning the docket and character of the Bucks County Action are substantiated by materials accompanying Cokus's previously filed Motion to Dismiss Due to Pendency of Prior Action, which Cokus incorporates by reference.

confirmed the true alignment of interests as Pena and ZEK v. Cokus. Moreover, it suggested collusion between ZEK and Pena.

After Pena sued Cokus in Bucks County, Cokus initiated suit against ZEK in the Bucks County Action before ZEK filed the instant suit against Cokus. While both ZEK and Pena are adverse to Cokus in both actions, ZEK and Pena are not adverse to each other. The only "claim" between them, asserted in a backward effort to manufacture an argument for maintaining the case in this jurisdiction, is ZEK's "interpleader" claim against Pena. Ironically, however this claim confirms that there is no adverse interest between ZEK and Pena, for it asserts, in essence, that Cokus and Pena have a dispute over $500,000, which ZEK is holding in escrow and to which ZEK has no claim or interest and which ZEK therefore seeks to deposit with the Court. ZEK Complaint ¶¶ 16, 17, 27-31; 28 U.S.C. § 1335. Moreover, in his Answer and Complaint and then in his Memorandum in Support of ZEK's Cross-Motion, Pena even agrees that the money should be deposited with the Court. Thus, ZEK and Pena are not even nominally adverse in the claim in which they placed themselves on both sides of the "v" in the hope of manufacturing jurisdiction.

In determining whether diversity jurisdiction exists, the Court will realign the parties in accordance with their interest. In this regard, the Court of Appeals for the Second Circuit in *Maryland Casualty Co. v. W. R. Grace and Co.*, 12 F. 3d 617, 622 invoked Justice Frankfurter in *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941):

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty ... to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' ...Litigation is the pursuit of practical ends, not a game of chess.

In *Maryland Casualty*, the Second Circuit adopted a "collision of interests" analysis – somewhat

broader than the "primary purpose" analysis of some jurisdictions – to determine whether parties should be realigned for jurisdictional analysis:

> Under this test courts require the existence of an actual, substantial controversy, or a collision of interests, see <u>Indianapolis, 314 U.S. at 69, 62 S.Ct. at 68</u>, but the conflict may in some cases concern an issue other than the so-called primary issue in dispute. [Citations Omitted.]   This approach is more flexible because it permits courts deciding whether diversity exists to consider the multiple interests and issues involved in the litigation.

The Second Circuit continued with commentary useful for applying the test:

> The purpose in realigning parties is to make sure that there is a *bona fide* controversy between, as the statute commands, citizens of different states.  In applying the collision of interests test therefore we must be mindful that actual and substantial conflicts in fact existed at the initiation of the lawsuit. Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court.

See *Provenance Media Group, <u>LLC v.</u> Alibraheem*, slip op., <u>2007 WL 2701978 (2007 S.D.N.Y.)</u> (applying collision of interest analysis.)

Here there can be no question that jurisdiction is lacking.  There are no adverse claims asserted between ZEK and Pena. The interpleader claim is not adverse, stating, in essence, that of the $2 million ZEK holds in escrow, it has no claim to $500,000, and the real dispute is between Pena and Cokus. Scratch beneath its surface, and it entails an admission that it is Pena and Cokus who are adverse and not ZEK and Pena. Indeed, Pena concedes the interpleader count that ZEK purported to bring against him, concluding in his Answer:

> WHEREFORE, Pena prays that the Court enter judgment permitting plaintiff to deposit into the Registry of the Court the sum of $499,766.93, which represents the 12.5% of the recovery to which Pena is contractually entitled by Cokus to receive.

Answer and Cross-Claim at 4.  Later, in his conclusory Memorandum in Support of ZEK's

Cross-Motion to Deposit Funds, Pena was remarkably compliant for an adversary:

> It is uncontested that the Court has jurisdiction over all parties and claims in this action. There is no basis for the Court to dismiss this action in deference to the action pending in Pennsylvania state court under the abstention doctrine as articulated by <u>Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)</u>. Accordingly, the Court should exercise the jurisdiction it has over this action and allow Plaintiff to deposit with the Court the funds to which Cokus and Pena each claim entitlement but to which Plaintiff has no claim.

Pena, having started suit in Pennsylvania, now prefers this jurisdiction. Here there is a collusion, not a collision, of interests. This case must be dismissed in its entirety for a lack of subject matter jurisdiction and allowed to proceed in the Court of Common Pleas of Bucks County, Pennsylvania, where all parties to the dispute first became parties to a legal action.[3]

**B.    The Prior Pending Action Doctrine Also Requires Dismissal.**

Even if diversity jurisdiction did exist, each of the factors of the prior pending action doctrine favor dismissal. Cokus fully briefed the prior pending action doctrine in her Motion to Dismiss Due to Pendency of Prior Action and the omnibus Memorandum entitled "Memorandum In Support Of Motion to Dismiss for Lack of Jurisdiction, Reply Memorandum in Support of Motion to Dismiss Due to Pendency of Prior Action, and Opposition to Cross Motion to Deposit Funds." Cokus incorporates these briefs and supporting exhibits and declarations by reference. For Pena to be opposing dismissal on this basis, favoring this forum over his selected, home-based forum, is particularly odd, and can only be explained by Pena and ZEK working jointly and

---

[3] Pena reconfirmed that the matter should proceed in Bucks County when, on November 20, 2007, he filed yet another action in Bucks County ("Bucks County Action II"), which mirrors virtually word-for-word the instant Cross Claim. The only readily apparent difference is that that pleading alleges that all facts and events giving rise to Pena's claims occurred in Bucks County. Bucks County Action II Complaint, attached hereto as Exhibit "B," at ¶ 10.

not as adversaries. Pena oddly reconfirmed that the matter should proceed in Bucks County when, on November 20, 2007, he initiated Bucks County Action II, described in the preceding footnote, and alleged that all events giving rise to his claims occurred in Bucks County.

### C. Pena's Contract Claim Must Be Dismissed Because A Contract To Provide Investigative Services On a Contingency Fee Basis Is Illegal.

The contract that forms the basis of the parties' business relationship and of Pena's breach of contract claim calls for payment of investigative services on a contingency fee basis. The purported contract between Lynch International, Inc. ("Lynch") (Pena's company) and Cokus, attached as Exhibit "A" to Pena's Cross Claim, states:

> Lynch will be entitled to 12 ½ % of any payments or recoveries that you receive from or in connection with any and all claims, actions, law suits [sic] or settlements ...

Pena is suing for this contingency fee for his investigative services. Cross Claim, ¶¶ 2-5, 11, 129-131. However, such contracts are illegal in the two states in which Lynch, as alleged in the Cross Claim at ¶ 4, was licensed, New York and New Jersey.

As stated, in part, in McKinney's General Business Law § 84:

> It is unlawful for the holder of a license to furnish or perform any services described in subdivisions one and two of section seventy-one of this article on a contingent or percentage basis or to make or enter into any agreement for furnishing services of any kind or character, by the terms or conditions of which agreement the compensation to be paid for such services to the holder of a license is partially or wholly contingent or based upon a percentage of the amount of money or property recovered or dependent in any way upon the result achieved.

Bergoff Detective Service v. Walters, 239 A. D. 439, 443, 267 N. Y. S. 464, 468-469 (1933) held that, under New York law, such a contract is "unquestionably void, illegal, unenforceable, and in contravention of the public policy of this state." Such a contract is illegal because of "the

tendency of such a contract to offer inducements to manufacture evidence or suborn perjury ...."

22 N.Y.Jur. 2d. Contracts § 177.

Likewise, the governing New Jersey regulation, NJ ADC 13:55-1.7, provides:

> No holder of a license under the Act may perform any of the services of a private detective, investigator or detective agency on a contingent or percentage basis, or make or enter into any agreement for furnishing services of any kind or character, by the terms or conditions of which agreement the compensation to be paid for such services to the holder of a license is partially or wholly contingent or based upon a percentage of the amount of money or property recovered, or dependent in any way upon the result achieved.

Further, in both New York and New Jersey, as well as Pennsylvania, it is unlawful to provide the services of a private investigator without a license. McKinney's General Business Law § 70(2); N.J. Stat. Ann. § 45:19-10; 22. P. S.§ 26.1. Thus, Pena's investigative activities must be limited by the restrictions placed on his license.

Because the contract at issue is void, illegal, unenforceable and against public policy, Pena's breach of contract claim must be dismissed.

### D. Pena's Unjust Enrichment Claim Must Be Dismissed Because Unjust Enrichment Cannot Be Invoked To Reward A Private Investigator For Providing Services Unlawfully.

Being on Lynch letterhead, the contract, attached to the Cross Claim as Exhibit "A," was drafted by Pena and/or Lynch. Despite the explicit illegality of the fee – outlawed to preserve the reliability of evidence gathered by investigators – Pena sought to obtain such a fee. The law will not encourage investigators to enter such unlawful contracts and perform services under such unlawful terms by granting them the fallback position -- if their client should refuse to pay the unlawful fee -- of a recovery on an unjust enrichment claim. Allowing such a recovery would create an incentive for investigators to offer customers illegal contracts at the risk of suborning

perjury in the hope that they could get away with the illegal contract. The absence of an alternative recovery, such as unjust enrichment, in this situation was squarely recognized under New York law.[4]   In view of the contingency fee in *Bergoff Detective Services*, the court held that "... the services rendered must be held to be intrinsically illegal and no recovery can be permitted on any theory." *Bergoff Detective Services*, 239 A.D. at 445, 267 N.Y.S. at 445. The court went on to order that:

> Since the contract, because of its nature, was illegal in its entirety as against public policy, plaintiff is debarred from recouping any moneys that it may have expended under it.

Pennsylvania and New Jersey law are identical on this issue. It is the services themselves, arising from the contractual relationship, that are intrinsically illegal; as provided, they could lead to the falsification of evidence or suborning of perjury. Permitting recovery under a *quasi* or implied contract or equitable theory would amount to an *ex post facto* approval of what was, for sound policy reasons, prohibited conduct on the part of the investigator. It was

---

[4]   Choice of law issues may arise, particularly when one moves beyond the issue of contract validity. The issue of the validity of the contract due to the contingency fee calls for application of New York and New Jersey law only because those are the jurisdictions where Pena was licensed and because he cannot conduct investigative business without a license; in other words, Pena's activities as an investigator must be limited by the restrictions of the state(s) issuing his license.

New York law may be relevant to the viability of an unjust enrichment claim. The New York choice of law principle requires application of the law of the state with the most significant relationship with the issue in conflict. *Indosuez International Finance B.V. v. National Reserve Bank*, 98 N.Y. 2d 238, 774 N.E. 2nd 696 (N.Y. 2002). Because Pena was licensed in New York, New York has an interest in ensuring that he does not evade the restrictions attached to his license by his invocation of the alternative, unjust enrichment theory. Yet, Pennsylvania also has a strong interest since both Cokus and Pena reside in Pennsylvania and Pena appears to have conducted his investigative services in Pennsylvania. New Jersey may have an interest because the agreement shows Lynch as having had a New Jersey address.

As argued above, Cokus submits that the law of each jurisdiction is the same on the unjust enrichment claim.

not some third-party or unforseen circumstance that resulted in the contract being void but the conduct of the very same party who seeks to recover under it. *F. F. Bollinger Co. v. Widmann Brewing Corp.*, 339 Pa. 289, 294-295, 14 A. 2d 81, 84 (1940) (Where plaintiff practices architecture and engineering without meeting statutory licensing requirements, plaintiff is barred from recovering even though services were performed and received and non-recovery would cause plaintiff to suffer financial hardship. "... [I]t is a hardship created by plaintiff's own conduct and not by the harshness of the rule of law;" *Goldman v. Kaplan*, 51 Pa. D. & C. 684, 687 (1944 Phila. Mun.) (Where contract rests on an illegal foundation, the court will not lend its aid to enforce it by recognizing quasi contractual recovery.); *Restatement (First) of Contracts* § 512 ("A bargain is illegal within the meaning of the Restatement on this Subject if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy.) *Shapiro v. Solomon*, 42 N. J. Super. 377, 383 126 A. 2d 654, 658 (App. Div. 1956) (recognizing that unjust enrichment claim may exist where contract is aborted **through no fault of plaintiff.**)

The issue can be approached from another perspective. A written contract precludes an unjust enrichment claim. *Wilson Area School District v. Skepton*, 586 Pa. 513, 520, 895 A. 2d 1250, 1254 (2006); *Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128 834 A.2d 1037 (App. Div. 2003); *Caputo v. Nice-Pak Products, Inc.*, 300 N.J. Super. 498, 693 A.2d 494 (App. Div. 1997) Thus, if the contract were valid, Pena's unjust enrichment claim would have to be dismissed. It makes no sense to permit Pena to recover under an alternative, unjust enrichment theory when it was his violation of the restrictions attached to his license that invalidated the contract. The consequence of invalidity, imposed for sound policy reasons, should not be undone by application of an alternative theory. Conduct punished with the left hand is not rewarded

with the right. The unjust enrichment claim must therefore be dismissed.

E. **Pena's Remaining Tort Claims Must Be Dismissed Under Pennsylvania's Gist Of The Action Doctrine.**

Beyond his effort at contract-based claims, Pena asserts two long-shot tort claims, injurious falsehood and "prima facie tort." Both must be dismissed under Pennsylvania's gist of the action doctrine. The gist of the action doctrine was recently described in *Reardon v. Allegheny College*, 2007 Pa. Super. 160, 926 A. 2d 477, 486-487 (2007):

> The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. *Hart v. Arnold*, 884 A.2d 316, 340 (Pa.Super.2005), citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa.Super.2002). The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter arises out of "breaches of duties imposed by law as a matter of social policy." *Hart* at 339, quoting *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581-582 (Pa.Super.2003), *allocatur denied* 578 Pa. 701, 852 A.2d 313 (2004).

*Gaffer Insurance Co., Ltd. v. Discovery Reinsurance Co.*, 2007 WL 2972580 (M.D. Pa. 2007).

Both the injurious falsehood claim – based on statements Cockus "on information and belief" made to her attorneys in support of her lawsuit – and the so-called *prima facie* tort claim stem back to the underlying alleged contractual relationship under which Pena seeks 12½% of Cokus's *qui tam* recovery. The injurious falsehood claim is a claim that Cokus lied to her attorneys about the contract with Pena. Cross Claim ¶ 118. The "*prima facie* tort" claim is a claim that, if no other doctrine applies, this unrecognized catch-all tort should apply because Cokus and Pena had a contractual relationship under which Pena provided investigative services.

In either case, there is no argument or rationalization that can evade the contract. Consequently, the gist of the action doctrine mandates dismissal.

F.  **Pena's Injurious Falsehood Claim – Based On Statements Cokus "On Information and Belief" Made To Her Attorneys In Support Of Her Lawsuit – Must Be Dismissed.**

Pena has contrived an "injurious falsehood" count, alleged entirely on information and belief, and predicated on statements he believes Cokus made to counsel in support of bringing a lawsuit and vindicating her legal rights. Cross Claim ¶ 118. The damages are, apparently, the 12 ½ % Pena believes he is entitled to and attorneys fees for litigating this action and/or the Bucks County Action – reversing the American rule. Apart from dismissal under all of the comprehensive theories discussed above, this claim must fail for at least two reasons. First, it does not satisfy the standard for injurious falsehood; the tort was not intended to cover privileged statements made to an attorney in connection with representation, and, secondly – and related to the first point – such statements are covered by the judicial or litigation privilege applicable to defamation and related actions.

Under the tort of injurious falsehood, the publication of a disparaging statement concerning the business of another is actionable where plaintiff can demonstrate that: 1) the defendant published a disparaging statement concerning the business of the plaintiff, 2) the statement was false, 3) the defendant intended that the publication cause pecuniary loss or reasonably should have recognized that publication would result in pecuniary loss, 4) the publication caused actual pecuniary loss, and 5) the publisher knew the statement was false or acted in reckless disregard of its truth or falsity. *Philip v. Selig*, 2006 WL 2947667 (Pa. Com. Pl. 2006) citing *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 246, 809 A.2d 243,

246 (2002) , citing, Restatement (Second) Torts § 623(A) (1977); <u>Patel v. Soriano, 369 N. J. Super. 192, 247, 848 A. 2d 803, 834</u> (App. Div. 2004) ("A plaintiff alleging trade libel must prove publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or otherwise to interfere with plaintiff's relations with others. [Citation omitted.] The communication must be made to a third person and must play a material part in inducing others not to deal with plaintiff.")

The elements of the tort indicate that it applies to trade libel and not to an individual vindicating his or her legal rights by seeking out, and speaking to, counsel. Pena's bizarre application of the tort would create a chilling effect on persons' access to the courts for purposes of adjudicating what any plaintiff genuinely believes to be a fair claim. This tort is not a substitute for wrongful use of civil proceedings or Rule 11. It is not intended to reverse, and there is no policy reason for allowing it to reverse, the long standing American rule.

It is obvious that the Cross Claim facts do no concern trade libel. The statements Cokus made to her attorneys in connection with asserting her legal rights were not disparaging remarks concerning Pena's business. Rather, they were statements concerning whether or not he had a contractual right to the money to which he claims he has a contractual right. Further, Pena has not alleged the pecuniary loss intended to be covered by the tort. The costs of litigation are merely the costs associated with adjudicating the parties' respective legal claims, not damages for trade libel. Further, the claimed loss of 12 ½ % of the *qui tam* award are the damages Pena seeks on his contract claim.

That the tort is misapplied is reinforced by the existence of what is know in Pennsylvania as the judicial privilege and in New Jersey as the litigation privilege. Statements essential to the

vindication of legal rights in judicial proceedings are immune to defamation liability. *Bochetto & Lentz, P.C. v. Gibson*, 580 Pa. 245, 251, 860 A.2d 67, 71 (2004) ("Pursuant to the judicial privilege, a person is entitled to absolute immunity for "communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought*," citing *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (1986));[5] *Commercial Insurance Co. of Newark v. Steiger*, 395 N.J. Super 109, 928 A.2d 126 (App. Div. 2007) (The absolute litigation privilege extends to all statements or communications in connection with the judicial proceeding.) Communicating with an attorney is essential to, and thus a regular part, of judicial proceedings. Indeed, such communications are deemed so necessary that they are conferred the additional protection of the attorney/client privilege.

Pena, therefore, fails to state a claim for injurious falsehood.

G.      **The Desperate Prima Facie Tort Count Must Be Dismissed.**

Even if dismissed for no other reason, such as lack of jurisdiction or under the gist of the action doctrine, the *prima facie* tort count must be dismissed because it has been recognized in neither Pennsylvania nor New Jersey. *D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. 2000); *Taylor v. Metzger*, 152 N.J. 490, 521-523, 706 A. 2d. 685, 700-701 (1998).[6] The facts alleged to do not present the occasion for creating a new tort doctrine because centuries of tort wisdom fail

---

[5] The Pennsylvania Supreme Court continued: "This privilege is based on the "public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate."

[6] In *Taylor*, the New Jersey Supreme Court provided a description of the concept, explained when it will not apply, decided that it did not apply in the matter before it, and therefore decided that the *Taylor* case did not present the occasion to decide whether New Jersey should recognize it.

to right this particular type of injustice.

### III. CONCLUSION

For the foregoing reasons, Pena's Cross Claim should be dismissed.

                                                             Respectfully submitted,

                                                             **BOCHETTO & LENTZ, P.C.**

                                                            /s/
                                         By:_____
                                                George Bochetto, Esquire
                                                David J. Perlman, Esquire
                                                1524 Locust Street
                                                Philadelphia, PA 19102
                                                Ph: (215) 735-3900
                                                Fx: (215) 735-2455

Date: December 13, 2007                                  *Attorney for Defendant Kathy Cokus*