UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ZEICHNER, ELLMAN & KRAUSE LLP,                :
Plaintiff and Interpleader Plaintiff,         :
                                              :  No.07 CIV 9521(JGK)(MHD)
                                              :
        – against –                           :
                                              :
                                              :
KATHY COKUS,                                  :
Defendant and Interpleader Defendant          :
                                              :
and                                           :
                                              :
OCTAVIO PENA,                                 :
Interpleader Defendant                        :

----------------------------------------------------------------x

OCTAVIO PENA,                                 :
Cross-Claim Plaintiff                         :
                                              :
        – against –                           :
                                              :
KATHY COKUS,                                  :
Cross-Claim Defendant                         :

----------------------------------------------------------------x


# CROSSCLAIM PLAINTIFF OCATVIO PENA'S MEMORANDUM OF LAW IN OPPOSITION TO CROSSCLAIM DEFENDANT COKUS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

I.    THE COURT HAS FEDERAL SUBJECT-MATTER JURISDICTION OVER THIS
      RULE 22 INTERPLEADER ACTION BECAUSE THE CITIZENSHIP BETWEEN
      THE PLAINTIFF AND DEFENDANTS ARE DIVERSE – THE ZEICHNER LAW
      FIRM IS A NEW YORK CITIZEN AND MR. PENA AND COKUS ARE
      PENNSYLVANIA CITIZENS ................................................................................... 6

II.   THE PENNSYLVANIA STATE COURT MAY NOT PROTECT MR. PENA'S
      FEDERAL INTERESTS AND THIS MILITATES AGAINST THE COURT CEDING
      JURISDICTION TO THIS COURT ........................................................................ 8

III.  THE CONTRACT THAT COKUS MADE WITH MR. PENA TO PAY HIM 12½% OF
      HER RECOVERY, THAT SHE INDEED ENCOURAGED HIM TO ACCEPT, IS
      ENFORCEABLE AT LAW AND IN EQUITY .................................................... 10

IV.   MR. PENA STATES VIABLE TORT-BASED CLAIMS FOR PUBLICATION OF
      INJURIOUS FALSEHOOD AND PRIMA FACIE TORT ................................. 14

      A.    Mr. Pena States A Claim For Publication Of Injurious Falsehoods
            Against Cokus ............................................................................................. 14

      B.    Cokus' Injurious Falsehoods Are Not Privileged ................................. 15

      C.    Prima Facie Tort Is An Acknowledged Tort In Pennsylvania And Mr.
            Pena States A Claim Thereunder ............................................................ 16

CONCLUSION .................................................................................................................. 18

## TABLE OF AUTHORITIES

*ABN Amro Verzekeringen BV. v. Geologistics Americas, Inc.,*
    485 F.3d 85 (2d Cir. 2007)........................................................................................11

*Allentown Ahead Fund, Inc. v. Classic Photo Laboratories, Inc.,*
    36 Lehigh Co. 401 (1975)........................................................................................12

*Allentown Ahead Fund, Inc. v. Kraynick,*
    240 Pa. Super. 701, 359 A.2d 917 (Pa. Superior Ct. 1975) ...............................12

*Bergoff Detective Services, Inc., v. Walters,*
    239 A.D. 439, 267 N.Y.S. 464 (1933) .................................................................13

*Costello v. Schmidlin,*
    404 F.2d 87 (3d Cir. 1966).....................................................................................12

*D'Errico v. DeFazio,*
    2000 Pa. Super. 354, 763 A.2d 424 (Pa. Super. Ct. 2000)..................................17

*Foote v. Shapiro,*
    6 Pa. D. & C.3d 574, 1978 Pa. Dist. & Cnty. Dec. LEXIS 346.........................12

*Joe O'Brien Investigations, Inc. v. Zorn,*
    263 A.D.2d 812, 694 N.Y.S.2d 216 (1999) .........................................................11

*John E. Rosasco Creameries, Inc. v. Cohen,*
    276 N.Y. 274, 11 N.E.2d 908 (1937)..............................................................11, 12

*Lamb v. Condon,*
    276 Pa. 544, 120 A. 546 (1923) .............................................................................12

*Lloyd Capital Corp. v Pat Henchar, Inc.,*
    80 N.Y.2d 124, 603 N.E.2d 246, 589 N.Y.S.2d 396 (1992)...........................10-11, 11, 13

*Kelly v. Kosuga,*
    358 U.S. 516 (1959)................................................................................................13

*Montone v. Radio Shack,*
    698 F. Supp. 92, (E.D. Pa. 1988) ............................................................................9

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983)......................................................................................................9

*Smith v. Griffiths,*
    327 Pa. Super. 418, 476 A.2d 22 (Pa. Super. Ct. 1984).....................................17

*Tarnoff v. Wellington Financial Corp.,*
    696 F. Supp. 151 (E.D. Pa. 1988) ...........................................................................9

*Thompson Design Group v. 1101-1125 Hudson St. LLC,*
    2007 U.S. Dist. LEXIS 6839 (D. N.J., January 31, 2007) ...................................................12

*Utz v. Johnson,*
    2004 U.S. Dist. LEXIS 11551 (E.D. Pa. June 16, 2004) ........................................... 16-17

## RULES, STATUTES AND OTHER AUTHORITIES

2007 N.Y. Op. Att'y Gen. 1, 20 n.3, 2007 N.Y. AG LEXIS 3 ........................................ 11

C.A. Wright, A.R. Miller and M.K. Kane, *7 Federal Practice and Procedure,*
    §1702, at 534-535 (3d ed. 2001) ............................................................................ 6

C.A. Wright, A.R. Miller and M.K. Kane, *7 Federal Practice and Procedure,*
    §1703, at 538-539, §1710, at 580-582, 591-593 (3d ed. 2001) .................................. 7

*Corbin on Contracts*, §79.5, footnotes 5 and 6, §88.2 ....................................... 11, 12

*Restatement (Second) of Contracts* §181, Comment c, Illustration 3 (1981) ...................... 11, 12

*Restatement (Second) Torts §623A* ............................................................. 14, 15

*Restatement (Second) Torts §624* .............................................................. 14, 15

*Restatement (Second) Torts §626* .................................................................. 15

*Restatement (Second) Torts §870* ............................................................. 16, 17

*Restatement (Third) of The Law Governing Lawyers, §82 "Client Crime or Fraud,"*
Comments b and d ................................................................................. 16

*Restatement (Third) of The Law Governing Lawyers, §93 Lawyer Work Product,*
*"Client Crime or Fraud."* ..................................................................... 16

Federal Rules of Civil Procedure Rule 22 ........................................................ *passim*

5 Pa.C.S. §1104 ...................................................................................... 10

18 Pa.C.S. §5704(4) ................................................................................... 8

22 P.S. § 12(b) ..................................................................................... 13

22 P.S. § 13(a) ...................................................................................... 13

United States Code, 18 U.S.C. §2511(2)(d) ........................................................... 8

United States Code, 28 U.S.C. § 1331 ................................................................ 6

United States Code, 28 U.S.C. § 1332 ........................................................................... 6

United States Code, 28 U.S.C. § 1335 ........................................................................... 6

United States Code, 28 U.S.C. § 1391 ........................................................................... 7

Cross claim Plaintiff, Octavio Pena submits this Memorandum of Law, together with the Declaration of Octavio Pena, dated December 20, 2007, in opposition to the motion of Cross claim Defendant Kathy Cokus to Dismiss the Amended Cross claim of Octavio Pena.

## PRELIMINARY STATEMENT

Cokus' motion should readily be denied.

**First**, the Court has subject matter jurisdiction over Zeichner Ellman & Krause LLP's ("the Zeichner law firm") interpleader action that it brought under Rule 22 of the Federal Rules of Civil Procedure. The citizenship between the interpleader plaintiff and defendants is diverse – the Zeichner law firm is a New York citizen and Mr. Pena and Cokus are Pennsylvania citizens. The threats Cokus made to the Zeichner law firm that she would sue the law firm should it distribute the funds to Mr. Pena placed the law firm in the position of a Rule 22 stakeholder.

**Second**, the Court should not cede federal jurisdiction of Mr. Pena's Cross claim to the Pennsylvania state court – he has substantial federal rights that he could possibly lose if the Court cedes jurisdiction. Cokus is recorded on an audio tape knowingly and freely contracting with Mr. Pena to pay him 12½% of the recovery she received. There is the possibility that Cokus' damning words – in her own voice – will not be received in evidence in the Pennsylvania state court proceeding because Cokus claims she did not give Mr. Pena her consent to record her admissions and it is arguable that Pennsylvania law requires the consent of all parties to be recorded before a recording can be entered into evidence. However, in federal court the consent of only one party is sufficient and Mr. Pena has already given his consent. If the Court ceded jurisdiction to the Pennsylvania state court, Mr. Pena could possibly lose his right to use Cokus' words against her.

**Third**, the contract in which Cokus agreed to pay Mr. Pena a percentage of her recovery is enforceable because there is no explicit statutory or regulatory provision preventing the Court from enforcing it. Indeed, courts realize Cokus' claim that the contract is unenforceable on public policy grounds to be "a very dishonest one" because she is attempting to avoid paying Mr. Pena a cent after receiving significant benefits from Mr. Pena's labors, including a *qui tam* payout of millions of dollars.

**Fourth**, Mr. Pena shows that: (a) he has sufficiently alleged a tort claim for publication of injurious falsehood; (b) Cokus' statements that are at issue in the injurious falsehood claim are not privileged both because she began making such statements prior to any judicial proceeding and because the "crime-fraud exception" to the attorney client privilege doctrine does not shield her statements to her lawyer since she made them for purposes of using her lawyer to aid and assist her in furtherance of her fraud; and (c) the Pennsylvania federal and state courts acknowledge *prima facie* tort and Cokus does not dispute that Mr. Pena sufficiently alleges such a cause of action.

## STATEMENT OF FACTS

On May 11, 2001, Cokus engaged Mr. Pena and his investigation firm, Lynch International, Inc. ("Lynch International") to assist her in civil and criminal matters in which she had been involved. (*See* Pena Amended Cross claim, ¶¶32-45.) While investigating these matters for her, he learned of a basis on which she could assert a *qui tam* lawsuit against her former employer, Bristol-Myers Squibb Company ("Bristol-Myers Squibb"). (*See* Pena Amended Cross claim, ¶¶46-47.) Cokus encouraged Mr. Pena to pursue his investigation and to find for her a law firm to prosecute the case on her behalf. (*See* Pena Amended Cross claim, ¶48.) She told him she had no money with which to pay him for his services or for his costs, and

encouraged him to continue his work on her behalf promising to pay him a percentage of the recovery she would receive. (*See* Pena Amended Cross claim, ¶¶49-52.)

Mr. Pena thereupon continued with his investigation in anticipation of receiving a percentage of her recovery. (*See* Pena Amended Cross claim, ¶58.) Mr. Pena arranged for Cokus to meet with a representative of the Zeichner law firm. (*See* Pena Amended Cross claim, ¶¶57-68.) Cokus expressed to him her complete dissatisfaction with the lawyer who was handling an employment related lawsuit she had brought against Bristol-Myers Squibb, and asked him to convince this law firm to represent her in the anticipated *qui tam* lawsuit. (*See* Pena Amended Cross claim, ¶¶53-68.) The Zeichner law firm later agreed to undertake this representation and began working with Mr. Pena to build a case for filing. (*See* Pena Amended Cross claim, ¶¶79-87.)

The Zeichner law firm prepared, at the instructions of Mr. Pena and Cokus, a formal contract for Cokus and Mr. Pena to sign in which she agreed to pay him 12½% of the recovery she received arising out of or relating to the *qui tam* lawsuit against Bristol-Myers Squibb. (*See* Pena Amended Cross claim, ¶¶69-71.) Cokus signed this contract together with Mr. Pena on July 13, 2001. (*See* Pena Amended Cross claim, ¶¶72-73.)

Afterwards, Cokus re-affirmed the contract she made with Mr. Pena, on July 17, 2001, in the presence of a representative of the Zeichner law firm, which at the same time she formally retained. (*See* Pena Amended Cross claim, ¶¶79-81.) Mr. Pena tape recorded this meeting. (*See* Declaration of Octavio Pena, dated December 20, 2007 ("Pena Dec."), at ¶¶2-6.) And on this audio recording, Cokus – in her voice – admits to contracting to pay Mr. Pena 12½% of the recovery she receives. (*See* Pena Dec., at ¶6.)

Mr. Pena thereafter continued to work with the law firm in building a *qui tam* lawsuit against Bristol-Myers Squibb which the law firm filed on September 24, 2001. (*See* Pena Amended Cross claim, ¶¶84-87.)

Cokus told Mr. Pena, afterwards, she was elated with the work he performed for her. (*See* Pena Amended Cross claim, ¶¶88-94.) And she told him she attributed the recovery she anticipated receiving, perhaps in the tens of millions of dollars, entirely to him. (*See* Pena Amended Cross claim, ¶90) ("I'm sure when the time comes that I do see the fruits of YOUR labor and I get paid, I will put the check in the safe and do nothing for probably a few months."))

However, more than six years later, when she learned she would receive a recovery, not in the tens of millions of dollars, but of possibly less than $4 million, she told Mr. Pena she never contracted to pay Mr. Pena any percentage of her recovery. (*See* Pena Amended Cross claim, ¶¶95-127.) But she let slip that she did. (*See* Pena Amended Cross claim, ¶104.) ("Remember I told you I had all my paperwork stolen from my car regarding all my cases? Well, I guess I purposely put almost everything out of my mind because it's just too much. But, I had absolutely zero recollection of how much Nathan's law firm was getting (what percentage) and I completely forgot that you get 12.5%?????? I don't even remember that at all.......isn't that weird?????")

And as part of Cokus' scheme to defraud Mr. Pena, she told him she "lost" everything, including the contract and e-mail correspondence showing she ever possessed knowledge that she had contracted to pay him a percentage of her recovery. (*See* Pena Amended Cross claim, ¶¶101-111.)

Next, Cokus instructed the Zeichner law firm that it should not pay Mr. Pena anything. (Pena Amended Cross claim, ¶¶112-113.) And afterwards, she retained a new lawyer, George A. Bochetto ("Bochetto"). Bochetto then directed the Zeichner law firm to escrow the entire

amount she contracted to pay Mr. Pena and it and alerted them they could be sued by her.  (*See* Pena Amended Cross claim, ¶¶114, 121, 125.)  And Cokus does not dispute this.

In furtherance of her scheme to defraud Mr. Pena, Cokus lied both to the Zeichner law firm and Bochetto telling them she had not contracted to pay Mr. Pena any percentage of her recovery, her signature on the contract was a forgery and Mr. Pena had not performed any investigative services on her behalf.  (*See* Pena Amended Cross claim, ¶¶114-125.)  After this, Mr. Pena sued Cokus in Pennsylvania state court for breach of contract.  (*See* Pena Amended Cross claim, ¶¶126-127.)

Caught in the middle of the fight between Mr. Pena and Cokus over the disputed funds, the Zeichner law firm filed an interpleader action under Rule 22 of the Federal Rules of Civil Procedure.  It sought to have the Court take the disputed funds out of its hands and have the funds deposited with the Court Registry.  This would thereby relieve it of any legal obligation either to Mr. Pena or Cokus and have Mr. Pena and Cokus fight-out their rights over the funds in this Court.  (*See* Doc. No. 1, Complaint, Interpleader Count related allegations, at ¶¶1-5, 11-13, 16-17, 30-31; Doc. No. 18-2, Answer of Interpleader Defendant Octavio Pena, dated November 20, 2007 (hereinafter "Pena Interpleader Answer"), at ¶¶1-5, 11-13, 16-17, 28-31.)

**ARGUMENT**

I.    **THE COURT HAS FEDERAL SUBJECT-MATTER JURISDICTION OVER THIS RULE 22 INTERPLEADER ACTION BECAUSE THE CITIZENSHIP BETWEEN THE PLAINTIFF AND DEFENDANTS ARE DIVERSE – THE ZEICHNER LAW FIRM IS A NEW YORK CITIZEN AND MR. PENA AND COKUS ARE PENNSYLVANIA CITIZENS**

The Court has subject matter jurisdiction over this action. Rule 22 of the Federal Rules of Civil Procedure is intended to remove the Zeichner law firm from being embroiled in the dispute between Mr. Pena and Cokus. *See* C.A. Wright, A.R. Miller and M.K. Kane, 7 *Federal Practice and Procedure*, §1702, at 534-535 (3d ed. 2001) ("The protection afforded by interpleader takes several forms. Most significantly, it prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim, and, when the stakeholder has no interest in the fund, forces the claimants to contest what essentially is a controversy between them without embroiling the stakeholder in the litigation over the merits of the respective claims. [Footnotes omitted].").

The Zeichner law firm thus is in the position for which Rule 22 interpleader is intended – it is a "stakeholder" having no interest in the funds in dispute. (*See* Pena Interpleader Answer, at ¶¶16-17, 28-31; Pena Amended Cross claim, ¶¶9, 125)

Subject matter jurisdiction in suits brought under Rule 22 is based on the federal question and diversity of citizenship jurisdiction grants found in the United States Code, 28 U.S.C. §§1331, 1332.[1] In diversity of citizenship cases this means that the amount in controversy must exceed $75,000, exclusive of interest and costs, and the plaintiff-stakeholder's citizenship must

---

[1]  On the other hand, the provision governing jurisdiction in statutory interpleader cases, 28 U.S.C. §1335, calls for diversity of citizenship between two or more of the adverse claimants and requires that the amount in controversy, which is measured in terms of the value of the stake, need only be $500. Cokus is mistaken in her belief that the Zeichner law firm alleges an action for statutory interpleader. The law firm specifically alleges a Rule 22 interpleader action. And Mr. Pena also alleges the court has subject-matter jurisdiction over his Cros.claim under Rule 22. (See Pena Interpleader Answer, at ¶¶14-6; Pena Amended Crossclaim, ¶9.)

be diverse from that of the claimants. And actions under Rule 22 are subject to the general venue provision, 28 U.S.C. §1391, in the usual diversity case, making venue proper in the district in which a substantial part of the property over which there is dispute is situated. *See* C.A. Wright, A.R. Miller and M.K. Kane, 7 *Federal Practice and Procedure*, §1703, at 538-539, §1710, at 580-582, 591-593 (3d ed. 2001). All the conditions which need to be satisfied for there to be federal subject matter jurisdiction over this lawsuit are fulfilled here. The Zeichner law firm is a New York citizen and Mr. Pena and Cokus are Pennsylvania citizens. Thus they are diverse. And Cokus does not dispute this. The amount in controversy exceeds $500,000 which is well beyond the jurisdictional threshold. And Cokus does not dispute this. And venue is appropriate here because the property over which there is a dispute is in New York. And Cokus does not dispute this. Further, all this is admitted by Mr. Pena in his answer to the Zeichner law firm's interpleader count and in his Amended Cross claim and which, of course, Cokus does not dispute. (*See* Pena Interpleader Answer, at ¶¶1-6; Pena Amended Cross claim, ¶¶1, 8-9, 125.)

Rule 22 interpleader is designed to prevent the Zeichner law firm from being compelled to undertake responsibility to decide, at its peril, which of the two – Mr. Pena or Cokus – is entitled to the funds. And Cokus does not dispute this. There is no collusion here. The Zeichner law firm does not control Mr. Pena as an interpleader plaintiff possibly could if it was the sole shareholder of the claimant. That Mr. Pena has not asserted a claim directly against the Zeichner law firm over his right to the funds, but has asserted a claim only against Cokus is not at all relevant to a Rule 22 interpleader determination. Mr. Pena's fight is with Cokus over the right to the funds and not with the Zeichner law firm which is simply the stakeholder. The absence of an adverse proceeding between them does not demonstrate they are aligned and thus are not diverse.

And Cokus does not cite any case or authority stating the absence of an adverse proceeding between the two shows they are aligned and are thus not diverse.

## II.    THE PENNSYLVANIA STATE COURT MAY NOT PROTECT MR. PENA'S FEDERAL INTERESTS AND THIS MILITATES AGAINST THE COURT CEDING JURISDICTION TO THIS COURT

Mr. Pena supports the legal arguments the Zeichner law firm makes in its memorandum of law in opposition to Cokus' motion to dismiss its Complaint. (*See* Document No. 10.) And Mr. Pena adds one thing further – retention of federal jurisdiction over his Cross claim is necessary, and indeed imperative, to protect his federal rights which the Pennsylvania state court may not do.

Cokus has, under <u>oath</u> in the Pennsylvania state court proceeding, denied she contracted to pay Mr. Pena a percentage of her recovery and stated her signature that appears on the contract she made with him is a forgery.[2] (*See* Pena Amended Cross claim, at ¶121.)

Yet, Cokus is recorded on audio tapes contracting – and in her own voice –to pay Mr. Pena 12½% of her recovery from the *qui tam* lawsuit. (*See* Pena Dec., at ¶6.) There is no question that this evidence is admissible in a federal proceeding, but there may be a question whether it is admissible in the Pennsylvania state court proceeding because Cokus denies (*See* Pena Dec. at ¶5) she gave her consent to Mr. Pena to have him record her oral communication with him. *Compare* 18 U.S.C. §2511(2)(d) (one party's consent to the interception is all that is

---

2 And, in the counterclaim that Cokus asserted against Pena in the Pennsylvania state court action, she stated, under oath, (a) she never contracted to pay Lynch International 12½% of the proceeds she received from the qui tam lawsuit; (b) Mr. Pena "may have, unbeknownst to Cokus, slipped to Cokus the signature page [of the July 13, 2001 contract], which she may have unwittingly signed"; (c) neither Lynch International nor Mr. Pena had performed any investigative services on her behalf for which she agreed to pay either one a percentage of any recovery she received arising out of, or related, to any claim made against Bristol-Myers Squibb; (d) the Zeichner law firm "secretly" prepared the July 13, 2001 contract for Mr. Pena and for him then to have her to sign; and (e) Cokus did not know she had agreed that Mr. Pena would receive 12½% of the recovery from the qui tam lawsuit and that the Zeichner law firm would receive 37½% of the recovery from the *qui tam* lawsuit. (Document 2-3, Exhibit F, Cokus' Counterclaim, at ¶¶13, 14, 15, 16, 23, 26, and 28.)

required) *with* 18 Pa.C.S. §5704(4) (all parties to the communication must consent to the interception); *Montone v. Radio Shack*, 698 F. Supp. 92, (E.D. Pa. 1988) (refusing to exclude evidence in federal diversity proceeding based on the Pennsylvania wiretap statute when only one party consented to the taping rather than all of parties); *Tarnoff v. Wellington Fin. Corp.,* 696 F. Supp. 151 (E.D. Pa. 1988) (same).

The possibility that in the Pennsylvania state court proceeding such damning evidence may not be permitted to see the light of day, whereas in this federal proceeding this evidence undoubtedly will, militates against application of the prior pending action or abstention doctrines to this case, because the state court proceeding will not sufficiently protect Mr. Pena's federal rights. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 25-26 (1983) ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.") This factor weighs in favor of the Court retaining jurisdiction over Mr. Pena's Cross claim.

Indeed, Cokus is recorded on the same tape being told by a representative of the Zeichner law firm that (1) she would receive 50% of the proceeds from any recovery she received from a *qui tam* lawsuit against Bristol-Myers Squibb; (2) Mr. Pena would receive 12½% of these proceeds; and (3) the law firm of Zeichner, Ellman & Krause LLP would receive 37½% of the proceeds. And Cokus, on this tape, expresses her agreement to this arrangement while she signs the agreements. And she is told also by the Zeichner law firm representative that his law firm prepared the July 13, 2001 contract she signed with Mr. Pena. (*See* Pena Dec., at ¶¶2-6.)

This audio tape recording of her admissions puts the lie to everything Cokus thus far has stated <u>under oath</u> in the Pennsylvania state court proceeding.

Thus, both Mr. Pena <u>and</u> the Zeichner law firm face the specter that their federal rights will be significantly and substantially impaired if the Court cedes jurisdiction to the Pennsylvania state court.

**III.    THE CONTRACT THAT COKUS MADE WITH MR. PENA TO PAY HIM 12½% OF HER RECOVERY, THAT SHE INDEED ENCOURAGED HIM TO ACCEPT, <u>IS ENFORCEABLE AT LAW AND IN EQUITY</u>**

Cokus argues that Mr. Pena is not entitled to any recovery, either on his legal claim for breach of contract or his equitable claim for *quantum meruit* and unjust enrichment, because a New York law and a New Jersey regulation do not permit him to be compensated by Cokus on the basis of a percentage of the recovery she received. In other words, Cokus argues that because the law and regulation do not permit Mr. Pena to receive such a recovery, he cannot enforce the arrangement she made with him – <u>indeed that she herself encouraged him to accept</u>. (*See* Pena Amended Cross claim, at ¶¶49-52, 69-73, 79-81.)

Cokus is wrong. The law does permit Mr. Pena to enforce his contract with Cokus and receive the percentage of recovery that Cokus agreed to pay him. A private contract that violates a statutory provision is nonetheless enforceable, unless, of course the legislative history specifically states that such a contract is void and not enforceable. Thus, for the court to effect such a proscription it must be explicitly stated in the statute or regulation. *See, e.g.*, 5 Pa.C.S. §1104 ("No contract between a manager and a professional boxer shall be legally valid until both parties to the contract appear before the commission and have received its approval, which shall be endorsed on the contract.")

But where no such specific proscription is stated in a law or regulation, the courts cannot affix the additional sanction of rendering a private contract void and unenforceable. *See Lloyd*

*Capital Corp. v Pat Henchar, Inc.,* 80 N.Y.2d 124, 128, 603 N.E.2d 246, 248, 589 N.Y.S.2d 396, 398 (1992) ("As a general rule also, forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as 'a sword for personal gain rather than a shield for the public good.' [Citation omitted]. Allowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law."); *See also Corbin on Contracts,* §79.5, footnotes 5 and 6, §88.2; *Restatement (Second) of Contracts* §181, Comment c, Illustration 3 (1981).

This has been the law of New York since 1937, and it has not changed since then. *See John E. Rosasco Creameries, Inc. v. Cohen,* 276 N.Y. 274, 278, 11 N.E.2d 908 (1937) ("If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied."); *Lloyd Capital Corp. v Pat Henchar, Inc., supra,* 80 N.Y.2d at 127, 603 N.E.2d at 247, 589 N.Y.S.2d at 397 ("'[W]here contracts which violate statutory provisions are merely *malum prohibitum*, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied,'" quoting *Rosasco Creameries, Inc. v Cohen, supra*); *ABN Amro Verzekeringen BV. v. Geologistics Americas, Inc.,* 485 F.3d 85, 99 (2d Cir. 2007) (the same, quoting *Rosasco Creameries, Inc. v Cohen, supra*); *See also* 2007 N.Y. Op. Att'y Gen. 1, 20 n.3, 2007 N.Y. AG LEXIS 3 (the same, citing *Lloyd Capital Corp. v Pat Henchar, Inc., supra,*).

Indeed, in *Joe O'Brien Investigations, Inc. v. Zorn,* 263 A.D.2d 812, 814-815, 694 N.Y.S.2d 216, 218-219 (1999), when a private investigator was found to have violated a New

York regulation by failing to have his client sign a written agreement authorizing him to charge for additional investigative services he had provided, the court nonetheless enforced the investigator's *quantum meruit* claim against his client, in absence of him satisfying the regulatory requirement, because the client had approved and authorized his services and otherwise "it would permit defendant to utilize the regulation as a means of evading a just obligation."

This also is the law of New Jersey. *See Costello v. Schmidlin*, 404 F.2d 87, 92-94 (3d Cir. 1966) (quoting from *Rosasco Creameries, Inc. v Cohen, supra*, and holding "[u]pon consideration of the stated factual elements and the factor that the New Jersey statute here involved does not contain a provision barring enforcement of claims of non-licensed engineers, we are of the opinion that plaintiff's claim for consulting engineering services against defendant is not unenforceable by reason of the circumstance that he was not licensed to practice as a professional engineer in New Jersey and that the Supreme Court of New Jersey would so hold."); *Thompson Design Group v. 1101-1125 Hudson St. LLC*, 2007 U.S. Dist. LEXIS 6839 (D. N.J., January 31, 2007) (following *Costello v. Schmidlin, supra*.)

And this is also the law of Pennsylvania. *See Allentown Ahead Fund, Inc. v. Classic Photo Laboratories, Inc.*, 36 Lehigh Co. 401 (1975) (a contract will not be declared void if it is not the intent of the legislature to make it illegal and void), *aff'd sub nom, Allentown Ahead Fund, Inc. v. Kraynick*, 240 Pa. Super. 701, 359 A.2d 917 (Pa. Superior Ct. 1975); *Foote v. Shapiro*, 6 Pa. D. & C.3d 574, 1978 Pa. Dist. & Cnty. Dec. LEXIS 346 (following *Allentown Ahead Fund, Inc. v. Classic Photo Laboratories, Inc., supra); Lamb v. Condon*, 276 Pa. 544, 549-551, 120 A. 546, 547-548 (1923) (although the regulation is penal in nature, the defendant is nonetheless not relieved of its obligation to plaintiff.)

There is no proscription in the law and the regulation to which Cokus refers that prevents the Court from enforcing the contract Cokus made with Mr. Pena.[3]  And equity does not permit Cokus to utilize the law or regulation to evade or avoid her financial arrangement with Mr. Pena, which she – and this is undisputed – encouraged him to accept.[4]

Indeed, the defense that Cokus is asserting to Mr. Pena's legal and equitable claims is described by the Supreme Court of the United States to be "a very dishonest one" – and the Supreme Court's description aptly applies to Cokus here – because it is used by a defendant in an attempt to obtain property that rightfully belongs to the plaintiff for nothing.  *See Kelly v. Kosuga*, 358 U.S. 516, 519 (1959) ("'It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions.'"); *Lloyd Capital Corp. v Pat Henchar, Inc., supra*, 80 N.Y.2d at128, 603 N.E.2d at 248, 589 N.Y.S.2d at 398; *See also Corbin on Contracts*, §79.5, footnotes 5 and 6, §88.2; *Restatement (Second) of Contracts* §181, Comment c, Illustration 3 (1981).

---

3 And Pennsylvania law does not proscribe a licensed private investigator from receiving compensation based on a percentage of a recovery he or she obtains for a client, and thus such a contract is enforceable in Pennsylvania. *See* 22 P.S. §§12(b) and 13(a).

4 *Bergoff Detective Serv., Inc., v. Walters*, 239 A.D. 439, 267 N.Y.S. 464 (1933), which Cokus cites, is inapplicable. The court, in that time, was extraordinarily solicitous about the maintenance of the marriage relation, and therefore, the court would not tolerate or sanction any contract in which the private investigator's compensation was contingent on its success in securing evidence for a husband of his wife's adultery with the object of securing for him a divorce and reducing his financial obligations to her.  The bargain being struck here was contingent on the investigator giving testimony of a specific content and character.  And that is not the bargain Cokus struck with Mr. Pena.  He would not testify before the federal grand jury, Cokus would.  Mr. Pena's role was to analyze the evidence he assembled for her and build a qui tam case for her and the Zeichner law firm to file and which afterwards he was used by Cokus and the Zeichner law firm to satisfy requests being made by the federal prosecutors for additional documentary evidence for them to use to build the United States' case against Bristol-Myers Squibb. (*See* Pena Amended Cross claim, ¶¶41-48, 58-63, 69, 82-87)

## IV.    MR. PENA STATES VIABLE TORT-BASED CLAIMS FOR PUBLICATION OF INJURIOUS FALSEHOOD AND *PRIMA FACIE* TORT

Mr. Pena alleges that immediately after Cokus learned she would receive the short-end of the settlement that the United States negotiated with Bristol-Myers Squibb, she schemed to deny she had ever contracted with Mr. Pena to pay him 12½% of the recovery she received. (*See* Pena Amended Cross claim, at ¶¶95-127.) She first eliminated all evidence in her possession to show she possessed knowledge she had contracted with him and then told the Zeichner law firm to withhold and thereafter escrow that portion of the recovery allotted to Mr. Pena. (*See* Pena Amended Cross claim, at ¶¶102-112.) She stated to the law firm she had not contracted with Mr. Pena. (*See* Pena Amended Cross claim, at ¶113.)

Cokus thereafter retained Bochetto, and told him the same. (*See* Pena Amended Cross claim, at ¶¶114, 122-125) But when the contract Cokus claimed she had never signed materialized with her signature appearing on it, she instructed Bochetto to claim that her signature was a forgery or later that she may have unwittingly signed the contract. (*See* Pena Amended Cross claim, at ¶¶114, 118-125.) By repeating her false statements to Bochetto, Cokus put him in jeopardy by insisting he aid and assist her, which he did, to have the Zeichner law firm put the funds allotted to Mr. Pena, to which Mr. Pena had a legal right, out of his reach and to require Mr. Pena, if he ever sought to possess these funds, to incur substantial legal fees and costs to attain them. (*See* Pena Amended Cross claim, at ¶¶114-127.)

### A.    Mr. Pena States A Claim For Publication Of Injurious Falsehoods Against Cokus

Mr. Pena alleges a recognized tort-based claim of publication of injurious falsehoods against Cokus under *Restatement (Second) Torts* §623A and §624 ("The rules on liability for the publication of an injurious falsehood stated in §623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the

publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.")

And his allegations track the elements of such a claim. Cokus' false statements that she published to the Zeichner law firm and then had Bochetto repeat to the law firm caused it to question whether Mr. Pena had a legally protected interest at all to the funds and, thereupon, to put out of his reach these funds by escrowing them.

It is this legally protected property interest to which Mr. Pena had the right to possess that Cokus by her published false statements caused then to be put out of his reach and thereby caused him to incur legal fees and costs to attempt to re-possess. Mr. Pena asserts a classic tort-based claim under *Restatement (Second)* §623A and §624, based on his legally protected property interest. Mr. Pena does not allege a claim of "trade libel," under *Restatement (Second) Torts* §626, to which Cokus alludes. And Cokus' injurious falsehoods do not arise out of any contractual duty she may have owed Mr. Pena.

**B.    Cokus' Injurious Falsehoods Are Not Privileged**

All of Mr. Pena's factual allegations centering on Cokus' conduct must be accepted as true for purposes of Cokus' motion. And thus Cokus' conduct by any standard is not privileged. (*See* Pena Amended Cross claim, at ¶¶95-127.)

**First,** Cokus began publishing injurious falsehoods prior to **any** litigation between the parties and therefore the privilege for statements made during a judicial proceeding does not apply. Rather, Cokus first made these statements in the context of a pre-litigation dispute over the rightful ownership of disputed funds and were directed at the Zeichner firm solely in its fiduciary capacity as having control over the funds not in its capacity as her attorney.

**Second,** Cokus does not enjoy a privilege to publish an injurious falsehood in these circumstances. Cokus published not opinions, but facts that she knew to be false. Her conduct is

fundamentally inconsistent with the basic premises of the adversary system – you cannot use your lawyer to aid and assist you in furthering your crime or fraud. This is the so-called "crime-fraud exception" to the attorney- client privilege and attorney-client work product doctrine. *See, e.g., Restatement (Third) of The Law Governing Lawyers*, §82 *"Client Crime or Fraud," Comments b and d*, §93 *Lawyer Work Product, "Client Crime or Fraud."*

There is no social interest here in protecting Cokus' conduct. But there is a public interest in preventing Cokus from attempting to misuse the client-lawyer relationship for her seriously harmful ends. And on a moral ground Cokus has forfeited any privilege she may have had. Indeed, based just on the allegations made by Mr. Pena in his Cross claim he has made out a *prima facie* showing the "crime-fraud exception" applies here and Cokus conduct is thus not privileged.

**C.**    *Prima Facie* **Tort Is An Acknowledged Tort In Pennsylvania And Mr. Pena States A Claim Thereunder**

The Court should proceed with Mr. Pena's *prima facie* tort claim. *See Restatement (Second) Tort* §870 ("One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.")

Although the Supreme Court of Pennsylvania has not definitively recognized this tort since it has not been called on yet to address it, the Pennsylvania intermediate appellate courts and the United States Court of Appeals for the Third Circuit and federal district courts acknowledge the tort does exist in Pennsylvania jurisprudence. And those courts that have addressed the tort, while acknowledging its existence, found however the plaintiff did not allege sufficient enough facts to satisfy the elements of the tort. *See, e.g. Utz v. Johnson*, 2004 U.S.

Dist. LEXIS 11551, *4-*7 (E.D. Pa. June 16, 2004) (stating, after surveying Pennsylvania federal and state court cases, "[a]ssuming that Pennsylvania would recognize claims for harassment and/or prima facie tort, we are not persuaded that the conduct alleged in this case rises to an actionable level"); *D'Errico v. DeFazio,* 2000 Pa. Super. 354, 763 A.2d 424, 433-434 (Pa. Super. Ct. 2000) (stating, after surveying Pennsylvania federal and state court cases, "we need not reach the issue whether a cause of action for intentional or *prima facie* tort exists in Pennsylvania because we find that appellants have failed to state a claim pursuant to § 870"); *Smith v. Griffiths,* 327 Pa. Super. 418, 476 A.2d 22 (Pa. Super. Ct. 1984) (the first Pennsylvania appellate court to address the claim stated "[i]n the instant case, the averments of the complaint do not disclose an intentional tort.")

That, however, is not the case here. Mr. Pena's allegations are sufficient for the Court to proceed with Mr. Pena's *prima facie* tort claim. Indeed, Cokus does not contend that Mr. Pena has not sufficiently alleged all the elements that are necessary to plead such a claim. And obviously, if Mr. Pena had not Cokus would have argued this, but she did not. The Court should proceed to adjudicate his claim as other courts have when faced with the issue.

## CONCLUSION

Accordingly the Court should deny Cokus' motion to dismiss because: (1) the Court has subject matter jurisdiction; (2) the possibility that Mr. Pena's federal rights could be compromised militates against ceding jurisdiction to the Pennsylvania state court; (3) the contract that Cokus made with Mr. Pena to pay him 12½% of her recovery is enforceable at law and in equity; and (4) Mr. Pena states viable claims for publication of injurious falsehoods and *prima facie* tort.

Dated: New York, New York
      December 21, 2007

Respectfully submitted,
**LAW OFFICES OF ARNOLD I. KALMAN**

By:    s/Arnold I. Kalman
      Arnold I. Kalman, Esq.
      245 South Hutchinson Street
      Philadelphia, Pennsylvania 19107
      Telephone: 215-829-9613
      Facsimile:  215-829-9619
      E-mail: arnold.i.kalman@verizon.net

      *Attorney for Interpleader Defendant and*
      *Cross-Claim Plaintiff, Octavio Pena*