UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZEICHNER, ELLMAN & KRAUSE, LLP,<br>Plaintiff and Interpleader Plaintiff,<br><br>v.<br><br>KATHY COKUS, Defendant and Interpleader Defendant, and OCTAVIO PENA, Interpleader Defendant. | No. 07-CIV-9521<br><br>REPLY MEMO IN SUPPORT OF MOTION TO DISMISS AMENDED CROSS CLAIM OF OCTAVIO PENA |

## I.   INTRODUCTION

Pena's Opposition Memorandum ("Opposition") fails to meet Cokus' arguments. With respect to the issue of subject matter jurisdiction and party realignment, he does not apply the collision of interests test to all of the underlying allegations of all of the parties.

With respect to the prior pending action issue, Pena, having originally chosen the Pennsylvania forum, has backtracked and now argues that it will not adequately protect his interests. In any event, an examination of the law concerning wiretaps indicates that the admissibility of the tape he references should not vary from forum to forum. Pena's interests will be protected in his chosen forum, the Pennsylvania state court.

With respect to Pena's breach of contract and unjust enrichment claims, the law in the two jurisdictions where Pena held a private investigator's license provides not just that a contingency fee agreement is unlawful but that the actual rendering of investigative services on a contingency basis is illegal. The unlawfulness of the act itself cannot be reversed by an *ex post facto* judicial revision of the contract. Where the act itself is unlawful, the law of New York does not require that a statute explicitly state that no recovery may be had on a unlawful contract. In

any case, it is Pennsylvania, not New York, law that governs the substantive contract and unjust enrichment claims since, as Pena alleges, all actions in connection with the contract occurred in Pennsylvania. Pennsylvania does not recognize what Pena considers to be the New York exception to the general rule that unlawful contracts are unenforceable.

With respect to the tort claims, Pena ignores Cokus' argument on the gist of the action doctrine, which bars tort claims when the relationship between the parties was essentially contractual. Further, even if that doctrine did not apply, Pena's Complaint fails to meet the elements of injurious falsehood. He also fails to establish both that a *prima facie* tort is recognized in Pennsylvania (which it is not) and that, if it did exist, that Cokus' asserting her rights in a fee dispute would state a claim.

Finally, Pena has signaled an intent to move to strike the instant brief for being filed out of time. While Pena believes it was due on December 31, 2007, Cokus calculated a due date of January 3, 2008. Cokus' calculation is based on three days being added for service under [Fed. R. Civ. P. 6(e)](#) and [Fed. R. Civ. P. 5(b)(2)(D)](#) and New Year's Day not being counted under Rule 6. Rule 5(b)(2)(D) references electronic filing and service through the court's transmission facilities, and Rule 6 allows three days for service made pursuant to Rule 5(b)(2)(D).

## II. ARGUMENT

### A. This Court Lack Federal Subject Matter Jurisdiction Over The Cross Claim of Octavio Pena.

Pena's Opposition ignores both the argument for realignment and the implications that spring from Pena's initiating and continuing litigation in Pennsylvania state court against Pennsylvania resident Cokus. As Cokus observed in her Reply Memorandum In Support of

Motion to Dismiss For Lack of Diversity Jurisdiction, the parties must be realigned based on the joint conduct of ZEK and Pena related to their effort to divest Cokus of 37 ½ and 12 ½ percent, respectively, of the *qui tam* award. These facts clearly place Cokus at odds with ZEK and Pena and unite ZEK and Pena.

As Cokus observed, quoting in *Maryland Casualty Co. v. W. R. Grace and Co.*, 12 F. 3d 617, 622 (2nd Cir. 1994), the Second Circuit follows the "collision of interest" test. As the Second Circuit interprets it, this test involves a determination of whether a substantial controversy exists between the parties. United States Fidelity and Guaranty Co. v. A&S Manufacturing Co., Inc., 48 F. 3d 131, 133 (4th Cir. 1995), citing *Maryland Casualty Co.*, 23 F. 3d at 622-23.

Here a substantial controversy does not exist, given the dispute at hand, between ZEK and Pena but a substantial controversy does exist between Cokus, on the one hand, and ZEK and Pena, on the other. To consider the interpleader to be the substantial controversy governing jurisdiction is to allow the tail to wag the dog. The rationale for interpleading a portion of what ZEK holds in escrow is based on the adverse position of Cokus and Pena. Moreover, Cokus and Pena are adverse for the same reason that Cokus and ZEK are adverse: there is a dispute over the handling of what ZEK and Pena claim is a contingent share in Cokus' *qui tam* award. While this should be enough for the realignment – even if the Cokus/ZEK and Cokus/Pena alleged contracts were independent – there is more. The Cokus/ZEK claims and counterclaims and the Cokus/Pena alleged claims and counterclaims are interdependent. The underlying dispute involves ZEK and Pena working together to take advantage of Cokus regarding the claimed contingency fee. For example, ZEK drafted the contract (a contract that is unlawful and

unenforceable) under which Pena asserts his claim against Cokus. Further, ZEK did so while representing Cokus and without disclosing the conflict. See Cokus Complaint against ZEK, attached as Exhibit "G" to Memorandum in Support of Motion to Dismiss Due to Pendency of Prior Action at ¶¶ 21, 55. Cokus' claims against ZEK concern this conflict of interest and failure to disclose – including a failure to disclose to Cokus that the Pena contract was illegal. Cokus Complaint against ZEK at ¶ 23. Moreover, prior to ZEK drafting the document under which Pena seeks to recover, it was Pena that led Cokus to ZEK, an introduction that resulted in the contract under which ZEK seeks to recover. Cokus Complaint against ZEK ¶¶ 17-19. Additionally, after the *qui tam* settlement, ZEK (still representing Cokus) worked with Pena to aid Pena in securing his claimed contingency fee. Cokus Complaint against ZEK ¶¶ 46-50. Here the collision of interests is not the interpleading of a portion of the money under dispute – which could occur in the Bucks County Action, in any event – but the dispute between Cokus, on the one hand, and the ZEK and Pena, on the other.

  It is odd, to say that least, that Pena wants to proceed in this forum after filing not just a first but a second action in Bucks County, Pennsylvania. The Bucks County Action does not simply confirm that Pena's true adversary is Cokus but that Pena has no real interest in whether the $500,000 at stake is deposited in this Court or the Bucks County Court of Common Pleas. For that matter, because Pena did not seek to have the funds deposited when he initiated the Bucks County Action, he appears to have no real interest in whether the funds are deposited with any court whatsoever other than their serving as vehicle for creating jurisdiction here. If the depositing of funds were truly important, both to Pena and to ZEK, they should not object to the funds remaining on deposit here while the substantive issues are resolved where the action was,

by Pena's own choice, first pending.[1]

**B.    The Prior Pending Action Doctrine Requires That The Bucks County Court Of Common Pleas Resolve This Dispute.**

Pena's concern over a purported tape – which Cokus requested in discovery in the Bucks County Action but Pena refused to produce – is a red herring. Pena's argument that "there is no question that this evidence is admissible in a federal proceeding, but there may be a question whether it is admissible in the Pennsylvania state court proceeding ..." presumably relates to the sixth factor to be considered under the prior pending action doctrine: whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.[2] But there can be no question that, even regardless of the presumed admissibility issue, the Pennsylvania court will adequately protect the party's rights, including Pena's. Pena confirmed that the Pennsylvania Court will adequately protect his interest by initiating his lawsuit there and continuing it with a second Complaint; it is disingenuous to select and actively pursue litigation and then argue that the chosen forum is undesirable because it will not adequately protect one's interest.

But even if Pena had not been pursuing his case in Pennsylvania, the argument falls apart. Neither statute Pena invokes as the foundation for his argument determines admissibility, and there is absolutely no reason that the impact of substantive statutes will vary between a federal and state forum. There would have to be some additional statutory provision, concerning

---

[1]    The Court could effectuate this result – having the funds deposited here while the merits were litigated in Pennsylvania – by staying this action under the prior pending action doctrine.

[2]    This is only one of a number of factors, and even if Pena's arguments were correct (which it is not), this factor alone would not necessarily carry the day.

admissibility, that would transform the substantive rule into a forum-sensitive rule of procedure.

The Federal statute, 18 U.S.C. § 2511(s)(d), states that it shall not be unlawful under the chapter in question for a person to intercept a communication if that person is a party to the communication or if one party to the communication consents to the interception. The Federal statute immunizes the interception of communications under certain circumstances and has nothing to do with admissibility in a Federal versus a state court. The state statute, 18 Pa. C.S. § 5704(4), provides that it shall not be unlawful under the chapter in question for a person to intercept a communication where all parties to the communication have given prior consent. It, too, has nothing to do with admissibility. It immunizes interceptions of communications under circumstances different from the Federal statute. Specifically, it permits interception when all parties to the conversation consent.

As substantive law, as opposed to procedural or evidentiary law, application of these wire-tapping statutes – without more – does not vary from one forum to the next. It does not follow from the fact that the Federal and state substantive statutes appear to conflict and provide opposing decisional rules on permissible wire-tapping that the statute enacted by Congress provides an evidentiary rule in a Federal forum and the statute passed by the Pennsylvania General Assembly provides an evidentiary rule in a Pennsylvania state forum. Conflict between substantive Federal and state wire-tapping calls for a preemption or conflict of law analysis to resolve the substantive issue. *Bansal v. Russ*, 513 F. Supp. 2nd 264, 283 (E. D. Pa. 2007) (Conflict between Federal wiretapping statute and Pennsylvania wiretapping statute, which requires approval of state attorney general when conducting warrantless wiretaps, resolved under preemption analysis in favor of Federal law.) To the extent the substantive law would determine

admissibility, the substantive law would be determined by a preemption or other appropriate conflict of law analysis by the forum court, whether Federal or state, and the result should be the same.

Pena's reliance on *Montone v. Radio Shack*, 698 F. Supp. 92 (E.D. Pa. 1988) and *Larnoff v. Wellington Financial Corp*., (E.D. Pa. 1988) is misplaced.  Both courts were led to analyze the conflicting wiretapping statutes and the subsidiary question of admissibility of a wiretap on a procedural, as opposed to substantive, ground based on a Pennsylvania state statute that has been repealed.  That statute, 18 Pa. C.S.A. § 5721, transformed the substantive Pennsylvania wiretapping statute into a procedural rule by allowing any person who is a victim of an unlawful wiretap to move to suppress the wiretap evidence.  *Montone*, 689 F. Supp. at 94; *Tarnoff* 696 F. Supp. at 151.  The Court then decided, in essence, that a state procedural rule does not apply in Federal Court.  But 18 Pa. C.S.A. § 5721 was replaced in 1998 by 18 Pa. C.S.A. § 5721.1, which does not have the same procedural reach calling for suppression of any unlawful wiretaps.  Thus, the Pennsylvania wiretap law is not adopted wholesale into a rule of procedure but, per the new statute, becomes procedural only for circumstances stated therein related to inadequate authorization for the wiretap, which is not applicable here.

For the foregoing reasons, the prior pending action doctrine applies and the instant case should be dismissed in favor of proceeding with the Bucks County Action.

**C.    The Contract and Unjust Enrichment Counts Must Be Dismissed.**

Pena's effort to preserve the contract and unjust enrichment counts despite his violation of the law is misplaced for a number of reasons.  Even if one assumes for the moment that New York contract law applies – which is not the case since Pennsylvania law governs the contract

claim itself – Pena misses an important point. It is not simply the contract that the applicable law deems to be unlawful but it is the provision of private investigative services itself with the contemporaneous understanding that remuneration is contingent that is unlawful. In other words, the activity in which Pena engaged and for which he now seeks payment was itself unlawful in the only two jurisdictions in which he held a license.

    As stated, in part, in [McKinney's General Business Law § 84](#):

> **It is unlawful for the holder of a license to furnish or perform any services** described in subdivisions one and two of section seventy-one of this article on a contingent or percentage basis or to make or enter into any agreement for furnishing services of any kind or character, by the terms or conditions of which agreement the compensation to be paid for such services to the holder of a license is partially or wholly contingent or based upon a percentage of the amount of money or property recovered or dependent in any way upon the result achieved. [Emphasis supplied.]

Likewise, the governing New Jersey regulation, [NJ ADC 13:55-1.7](#), provides:

> **No holder of a license under the Act may perform any of the services of a private detective, investigator or detective agency on a contingent or percentage basis,** or make or enter into any agreement for furnishing services of any kind or character, by the terms or conditions of which agreement the compensation to be paid for such services to the holder of a license is partially or wholly contingent or based upon a percentage of the amount of money or property recovered, or dependent in any way upon the result achieved. [Emphasis supplied.]

    It is not simply the contract itself that, like the loan agreement with the unlawful interest rate in [*Lloyd Capital Corp. v. Henchar,* 80 N.Y.2d 124, 603 N.E.2d 246 (1992)](#), that is unlawful but the activity in which Pena engaged and for which he now seeks payment that is unlawful. It is no answer that the conduct would have been lawful if the contract had been for an hourly or flat rate, as if the illegality can be erased on an *ex post facto* basis by reformulating the payment terms. Rather, the conduct itself, not simply the contract, was deemed unlawful the moment

services were provided. The unlawfulness of the conduct at the outset prevents the Court from going back and awarding Pena any payment under the contract or under an alterative theory of recovery. Even the New York cases that permit recovery under some circumstances where the contract was unlawful recognize that where the **conduct** is deemed unlawful the general rule of unenforceability, not the exception, applies. *Unger v. Leviton*, 787 N.Y. Supp. 2d. 625, 629 (2004) ("In such cases, the contract will be enforced **to the extent that the court can do so without compelling the precise conduct made unlawful by the statute**." [Emphasis supplied.]); *Hilgendorf v. Hilgendorf,* 241 A.D. 2d. 481, 481-482 660 N.Y. S. 2d. 150 (1997) (Agreement is enforceable only if it does not contemplate or necessarily entail unlawful conduct.); *X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 519 634 N.E.2d 158, 161 (1994) (Question is whether agreement will end up compelling precise conduct statute seeks to prohibit.); *Dodge v. Richmond,* 10 A.D. 2d 4, 14, 196 N.Y. Supp. 2d 477, 486 (1960) (Contract enforceable only where it does not compel prohibited conduct.) Thus, Pena's contract is unenforceable under New York law, and, for the reasons already explained, the backup theory of unjust enrichment cannot stand. *Bergoff Detective Service v. Walters*, 239 A. D. 439, 443, 267 N. Y. S. 464, 468-469 (1933).[3]

---

[3] Pena fails to distinguish the New York case most closely on point, *Bergoff*, which did indeed find an investigator's contingency agreement unenforceable under either a contract or unjust enrichment theory. The *Bergoff* case is not distinguishable based on Pena's historical speculation that at that time the court was "extraordinarily solicitous about the maintenance of the marriage relationship" and presumably courts are no longer so concerned about it. Pena Memo, n. 4. Rather, the case turns on the still applicable legal principle that investigators cannot work for payment on an outcome determinative basis.

Further, the idea that Pena's alleged contract is not really a contingency agreement because the contingency did not entail the contracting party giving testimony merits little consideration. Because payment was contingent on victory, it is a contingency agreement and

But Pennsylvania's is the substantive law under which Pena must prosecute his claim, even while New York and New Jersey, being the only states where he is licensed, govern the restrictions placed on his practice. This is what Cokus intended when she wrote in note 4 of her Memorandum in support of her Motion that "Pena's activities as an investigator must be limited by the restrictions of the state(s) issuing his license." Pennsylvania law must apply for prosecution of Pena's claim because, as he alleges in the Bucks County II Complaint, attached as Exhibit "B" to Cokus Motion, at ¶ 10, all the facts and events giving rise to the claim occurred in Pennsylvania.[4]

Despite Pena's glancing reference to Pennsylvania law, it does not in any respect

---

entails the same risk of procuring false evidence to promote payment to the investigator.

[4]   This fact creates an additional problem for Pena since he is not permitted to practice as an investigator in Pennsylvania without a Pennsylvania license. The Private Detective Act of 1953, 22 Pa. C.S.A. §13 states that individuals and corporations are prohibited from engaging in the "business of private detective, or the business of investigator, . . . without having first obtained a license so to do as herein provided." 22 Pa. C.S.A. §13. The Private Detective Act plainly states that "[a]ny person in violation of the provisions of section 3(a)[22 Pa. C.S.A. §13] by reason of engaging in the private detective business without a license, shall upon conviction thereof, be guilty of a misdemeanor of the third degree." 22 Pa. C.S.A. §26.1.

The lack of a Pennsylvania license is another reason Pena's contract and unjust enrichment counts must be dismissed. See *F.F. Bollinger Co. v. Widmann Brewing Corp.*, 14 A.2d 81 (Pa. 1940); *Reilly v. Prudential Ins. Co.*, 107 A. 223 (Pa. 1919)(unlicensed insurance brokers were refused recovery of compensation); *Golder v. Rabinowitz*, 190 A. 407 (Pa. Super. 1937)(unlicensed insurance agent barred from recovering commissions for services he was prohibited by statute from performing); *In re Benninger*, 357 B.R. 337 (Bankr.W.D.Pa. 2006)(one engaged in the unauthorized practice of law cannot enforce a contract which violates public policy).

Courts in other jurisdictions have specifically addressed whether an unlicensed private investigator can enforce a contract for work performed in a state in which he was unlicensed and have concluded that the contracts are unenforceable. *Landi v. Arkules*, 835 P.2d 458 (Ar. App. 1992); *Bergantzel v. Mlynarik*, 619 N.W. 309 (Iowa 2000).

recognize an exception to the rule of non-enforcement of an unlawful contract in instances where a statute does not explicitly provide that a contract cannot be enforced. The Pennsylvania Supreme Court has consistently held that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void. *Dippel v. Brunozzi*, 74 A.2d 112 (Pa. 1950); *F.F. Bollinger Co. v. Widmann Brewing Corp.*, 14 A.2d 81, 84 (Pa. 1940)("[i]t is well settled that the courts will not lend their aid to the enforcement of unlawful contracts which are founded upon transactions in violation of a public policy declared by the legislature."). See also Cokus' Memorandum in Support of Motion to Dismiss at 9.

Pena's citations to Pennsylvania trial court opinions are off point and bear little weight. *Foote v. Shapiro*, 6 Pa. D & C. 3d 574 (Lehigh Cty. 1978) concerned a contract that violated not a statute but the Rules of Professional Conduct, and, moreover, was between two attorneys. The contract was enforced because "The Code of Professional Responsibility is not a legislative enactment or statement of positive law." *Id*. at 3. As that Court recognized:

> A contract is illegal "'if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy.'"Contractor *Industries v. Zerr, 241 Pa. Superior Ct. 92, 97, 359 A. 2d 803, 805 (1976)*, quoting *Restatement, Contracts, §512 (1932)*. A contract is illegal and unenforceable if either its formation or performance is prohibited by statute: *F. F. Bollinger Co. v. Widmann Brewing Corp., 339 Pa. 289, 14 A. 2d 81 (1940)*.

*Id.* In *Lamb v. Condon*, 276 Pa. 544, 547, 120 A. 546, 547 (1923), plaintiff did business under a fictitious name that he failed to register, but that lapse had nothing to do with plaintiff's claim and caused no harm and so did not stand as a defense. As the court stated:

> Here the plaintiff used a fictitious name when he did business as Lamb & Co., and, as a result, might have misled a creditor who was unaware of the true situation, but no one was harmed in the present instance

**D.   The Injurious Falsehood and Prima Facie Tort Counts Must Be Dismissed Under Pennsylvania's Gist Of The Action Doctrine.**

Though he filed an opposition, Pena ignored this argument. One can only assume that, since he offers no argument against it, he concedes it.

**E.   Pena Fails To State A Claim For Injurious Falsehood.**

Pena fails to confront Cokus' arguments concerning his misapplication of this tort and cites not one legal authority supporting his unique, unprecedented approach. Pena strangely argues that a client's communications with her attorney in an effort to assert her legal rights are tortious if litigation later proves her wrong on disputed points. Pena would apply the tort as a new sanction mechanism -- a wrongful use claim improperly brought as a counterclaim or a reversal of the American rule. Cokus earlier invokes the element of the tort, which Pena ignores:

> Under the tort of injurious falsehood, the publication of a disparaging statement concerning the business of another is actionable where plaintiff can demonstrate that: 1) the defendant published a disparaging statement concerning the business of the plaintiff, 2) the statement was false, 3) the defendant intended that the publication cause pecuniary loss or reasonably should have recognized that publication would result in pecuniary loss, 4) the publication caused actual pecuniary loss, and 5) the publisher knew the statement was false or acted in reckless disregard of its truth or falsity. *Philip v. Selig*, 2006 WL 2947667 (Pa. Com. Pl. 2006) citing *Pro Golf Mfg. v. Tribune Review Newspaper* Co., 570 Pa. 242, 246, 809 A.2d 243, 246 (2002), citing, Restatement (Second) Torts § 623(A) (1977); *Patel v. Soriano*, 369 N. J. Super. 192, 247, 848 A. 2d 803, 834 (App. Div. 2004) ("A plaintiff alleging trade libel must prove publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or otherwise to interfere with plaintiff's relations with others. [Citation omitted.] The communication must be made to a third person and must play a material part in inducing others not to deal with plaintiff.")

The facts in the Complaint simply do not fit the elements. Cokus did not say anything disparaging about Pena's business – simply that she did not have a valid contract with him. Also, she did not intend that the publication would cause a pecuniary loss -- that was not the true

purpose of the communication; rather, she intended that she should realize her entitlement to keep money she is legally entitled to keep, even though the obvious effect of her vindicating her right -- as in any economic dispute -- is that Pena will not have the money.

It is not necessary that the judicial privilege or attorney client privilege apply to these circumstances for the tort to be defeated – even though they do apply.  As Cokus argued, the mere existence of these privileges to ensure the fair adjudication of claims and ensure the flow of communication with counsel demonstrates that the tort of injurious falsehood does not apply to communications to counsel in connection with vindicating legal rights.  Naturally, Pena cites no case anywhere in the nation applying the tort to remotely similar circumstances.

**F.     Pena's Count For *Prima Facie* Tort Must Be Dismissed.**

Nothing Pena says in his Reply Memorandum refutes Cokus' point, for which Cokus cited *D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. 2000), that the *prima facie* tort has not been recognized in Pennsylvania.  To argue, as Pena does, that some courts dismissed supposed *prima facie* tort claims because their facts would be insufficient for such a cause of action even if it did exist gets Pena nowhere.   Pena must establish **both** that the cause of action exists **and** that his facts are sufficient to state a claim.  As the Court stated in *D'Errico*:

> We agree with appellee and the trial court that Pennsylvania has not yet adopted intentional or *prima facie* tort as set forth in § 870 of the Restatement because only our supreme court and the legislature can adopt new causes of action in Pennsylvania.

*Id.* at 433.  The court went on to explain that courts have either predicted that the Pennsylvania Supreme Court would not recognize the tort, or, alternatively, rather than make that prediction, found the facts insufficient to state a claim.  In *D'Errico*, the court did both.  It found that the tort

was not adopted and that the facts would not state a claim in any event. That **Pena** cites it as authority merely substantiates the weakness of his position. There is no legal support for it.

Pena does nothing to argue that the facts of the instant case would be sufficient to state a claim if the cause of action existed. Clearly, Cokus' asserting her legal right by communicating with an attorney, which communications resulted in $500,000 being held in escrow until the economic dispute is adjudicated, would not state a claim. In *D'Errico*, it was insufficient where a county sheriff accompanied an employer in his act of intimidating and terminating employees. In Pena's other citation, *Utz v. Johnson*, 2004 WL 1368824 (E.D. Pa. 2004), it was insufficient, if a cause of action did indeed exist, where a party knowingly made false statements, threatened to bring criminal charges if money was not paid, and circulated damaging e-mails within the community. In the dated case of *Smith v. Griffiths*, 327 Pa. Super. 418, 476 A. 2d 22 (1984), it was insufficient, if such a claim indeed existed, that an opposing attorney in a divorce proceeding gave his former client illegal advice to remove property from the marital home in order to coerce the client's spouse to agree to a property settlement.

In short, Pena's authority does not establish either that the cause of action exists or that his facts would be sufficient to state a claim. He must do both.

### III.  CONCLUSION

For the foregoing reasons, the Amended Cross Claim of Octavio Pena should be dismissed.

        Respectfully submitted,

        **BOCHETTO & LENTZ, P.C.**

        /s/
By:_____
        George Bochetto, Esquire
        David J. Perlman, Esquire
        1524 Locust Street
        Philadelphia, PA 19102
        Ph: (215) 735-3900
        Fx: (215) 735-2455

Date: January 4, 2008        *Attorneys for Defendant Kathy Cokus*